**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA

v.

EDWARD McLAUGHLIN,

Defendant.

NO. 3:CR-12-0179

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court is the Motion to Sever (Doc. 61) filed by Defendant Edward McLaughlin ("McLaughlin"). McLaughlin requests that the charges against him be severed from those of his co-defendant, Gary Williams ("Williams"), based on a proffer statement provided by Williams implicating McLaughlin in the charged offenses. McLaughlin argues that his Sixth Amendment confrontation right will be violated by the admission of the proffer statement at a joint trial unless Williams elects to testify in his own defense. Because the serious risk that a joint trial will violate McLaughlin's Sixth Amendment rights outweighs the public interest in judicial economy in a joint trial in this case, the motion to sever will be granted.

**I. Background**

On August 28, 2012, a federal grand jury returned a three-count Superseding Indictment charging Defendant McLaughlin with conspiracy to commit a murder-for-hire, in violation of 18 U.S.C. § 1958 (Count 1); solicitation to commit a crime of violence, in violation of 18 U.S.C. § 373 (Count 2); and carrying and possessing a firearm in furtherance of a crime of violence as aiders and abettors, in violation of 18 U.S.C. § 924© and 2 (Count 3). (Doc. 30.) The Superseding Indictment charges Williams, McLaughlin's co-defendant, with violations of 18 U.S.C. § 1958 (Count 1) and 18 U.S.C. § 1924(c) and 2 (Count 3). (*Id.*)

The Superseding Indictment alleges that McLaughlin solicited Williams to murder his ex-wife. (*Id.*) As part of the conspiracy, McLaughlin is claimed to have shipped, or caused

to be shipped, a Mauser rifle to Williams for use in the planned murder. (*Id.*) McLaughlin is also alleged to have corresponded with Williams regarding the murder plot by telephone and mail. (*Id.*) The written correspondence encouraged Williams to complete the murder, and also provided instructions on how the murder should be committed. (*Id.*) McLaughlin traveled and met with Williams to teach him how to accurately fire the rifle. (*Id.*) In exchange for Williams murdering his ex-wife, McLaughlin promised to provide money and employment with a yearly salary of approximately fifty thousand dollars ($50,000.00). (*Id.*)

On December 12, 2012, McLaughlin filed the instant motion to sever all charges against him from those charges against Williams. According to McLaughlin, severance is necessitated in this case to protect his constitutional rights. In opposition, the Government contends that it is premature to order severance based on evidence that may not be admissible at a joint trial of McLaughlin and Williams. McLaughlin's motion to sever has now been fully briefed and is ripe for disposition.

## II. Applicable Legal Standards

### A. Rule 8 of the Federal Rules of Criminal Procedure

"Federal Rule of Criminal Procedure 8 governs joinder of offenses and joinder of defendants." *United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003). It states:

> (a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
>
> (b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8.

Rule 8(b) embodies the "the fundamental principle that the federal system prefers 'joint trials of defendants who are indicted together [ ]' because joint trials 'promote

2

efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 537, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993) (alteration in original)). Under Rule 8(b), "[i]t is not enough that defendants are involved in offenses of the same or similar character; there must exist a transactional nexus in that the defendants must have participated in 'the same act or transaction, or in the same series of acts or transactions,' before joinder of defendants in a multiple-defendant trial is proper." *United States v. Jimenez*, 513 F.3d 62, 82-83 (3d Cir. 2008) (citing Fed. R. Crim. P. 8(b); *Irizarry*, 341 F.3d at 287 n.4). Nevertheless, "[t]he mere allegation of a conspiracy presumptively satisfies Rule 8(b), since the allegation implies that the defendants named have engaged in the same series of acts or transactions constituting an offense." *Irizarry*, 341 F.3d at 289 n.5 (quoting *United States v. Friedman*, 854 F.2d 535, 561 (2d Cir. 1988)).

**B.     Rule 14 of the Federal Rules of Criminal Procedure**

Even if joinder of defendants is proper under Rule 8(b), a district court may order severance under Federal Rule of Criminal Procedure 14 if the potential prejudice outweighs the expense and time of separate trials that essentially retry the same issue. *See Zafiro*, 506 U.S. at 539, 113 S. Ct. 933. Rule 14(a) provides:

> Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a).

"It is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540, 113 S. Ct. 933. Severance should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Urban*, 404 F.3d at 775 (quoting *Zafiro*, 506

3

U.S. at 539, 113 S. Ct. 933).

To prevail on a Rule 14 motion, a defendant has "to overcome a 'heavy burden' to justify severance." *United States v. Herrera-Genao*, 419 F. App'x 288, 294 (3d Cir. 2011) (citing *United States v. Console*, 13 F.3d 641, 655 (3d Cir. 1993)). The defendant must demonstrate that "the denial of severance would lead to 'clear and substantial prejudice resulting in a manifestly unfair trial.'" *Urban*, 404 F.3d at 775 (quoting *United States v. Palma–Ruedas*, 121 F.3d 841, 854 (3d Cir. 1997), *rev'd on other grounds by United States v. Rodriguez–Moreno*, 526 U.S. 275, 119 S. Ct. 1239, 143 L. Ed. 2d 388 (1999)).

In the context of multiple defendants, the Third Circuit has instructed that prejudice sufficient to warrant severance may occur in the following situations: "(1) a 'complex case' involving 'many defendants' with 'markedly different degrees of culpability,' (2) a case . . . where evidence that is probative of one defendant's guilt is technically admissible only against a co-defendant, and (3) a case where evidence that exculpates one defendant is unavailable in a joint trial." *United States v. Balter*, 91 F.3d 427, 432–33 (3d Cir. 1996) (citing *Zafiro*, 506 U.S. at 539, 113 S. Ct. 933).

In deciding whether to grant a severance motion, "the trial court should balance the public interest in joint trial against the possibility of prejudice inherent in the joinder of defendants." *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991) (citing *United States v. De Peri*, 778 F.2d 963, 984 (3d Cir. 1985)). Ultimately, however, "[t]he decision to sever a trial is left to the sound discretion of the District Court." *United States v. Ginyard*, 65 F. App'x 837, 838 (3d Cir. 2003) (citing *Zafiro*, 506 U.S. at 538–39 ("Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.")).

### III. Discussion

**A.    The Parties' Contentions**

    **1.    McLaughlin's Argument**

McLaughlin's request to have his charges severed is predicated on a statement given by his co-defendant to federal agents on June 14, 2012. (Doc. 61, 2.) Specifically, McLaughlin claims that Williams was interviewed by FBI Task Force Officer Timothy Harding pursuant to a proffer agreement. (*Id*.) During the interview, McLaughlin believes that Williams admitted to involvement in a murder-for-hire plot against McLaughlin's ex-wife. (*Id*.) It is further alleged that Williams detailed the payment he was to receive for murdering McLaughlin's ex-wife, that McLaughlin mailed a rifle to Williams for use in the murder, and that McLaughlin and Williams agreed to correspond in code when referring to the rifle and its bullets. (*Id*.)

Based on Williams' proffer statement, McLaughlin argues that a Rule 14 severance is warranted in this case in order to avoid the violation of his Sixth Amendment confrontation right. (*Id*. at 3-5.) In particular, McLaughlin contends that Williams' proffer statement presents the problem contemplated by the Supreme Court in *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968) and its progeny. (*Id*.) Moreover, while McLaughlin acknowledges that the Supreme Court subsequent to *Bruton* clarified that the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction and redaction of the co-defendant's statement, he asserts that there is no possibility that redaction of Williams' statement could satisfy *Bruton* and its progeny if offered at trial in this case. (*Id*. at 5-8.) Thus, the *Bruton* problem will only be alleviated if Williams elects to testify at trial in his own defense. (*Id*. at 8.) But, because Williams reserves the right to decide whether to testify up until his defense is ready to rest, if he decided at that time not to testify, McLaughlin's Sixth Amendment confrontation

5

rights would have already been violated, and he would be compelled to seek a mistrial. (*Id*.) This, McLaughlin reasons, would unnecessarily contravene the principles of judicial economy upon which the joinder rules are based. (*Id*.) As a result, McLaughlin maintains that this is a proper case for the severance of charges against co-defendants. (*Id*.)

### 2. The Government's Opposition

The Government does not dispute McLaughlin's contention that his co-defendant provided a statement pursuant to a proffer agreement. Instead, the Government submits that the motion to sever is premature because Williams' proffer statement may not be admissible at trial. (Doc. 65, 2.)

According to the Government, the proffer agreement entered into with Williams provides that his statements and admissions cannot be used in the Government's case-in-chief in any criminal prosecution against him. (*Id*.) However, the proffer agreement is subject to three exceptions. (*Id*. at 2-3.) First, the statements and admissions can be used in the Government's case-in-chief against Williams "if the government makes a good faith determination that Williams was not candid and truthful or withheld material evidence in his proffer." (*Id*.) Second, the statements and admissions can be used by the Government "if Williams were to testify at trial in a manner materially inconsistent with his previous statements and admissions or presents a defense materially inconsistent with such statements and admissions." (*Id*. at 3.) Third, the statements and admissions can be used by the Government "to rebut any evidence or arguments offered on Williams' behalf which are materially inconsistent with such statements and admissions." (*Id*.)

The Government does not respond in detail to the legal authority cited by McLaughlin, which he explains as compelling the severance of charges in this case. Rather, the Government's position is that it is "simply premature" to order severance based on a proffer statement that may not be admissible at a joint trial of McLaughlin and Williams.

(*Id*. at 6.) The entirety of the Government's argument in opposition to McLaughlin's motion is as follows:

> In our case, it is not yet clear whether Williams' proffer statement is a confession or party admission that the government would be able to readily admit into evidence in its case-in-chief. Indeed, unless at least one of the exceptions noted above is present at the time of trial, Williams' proffer statement will not be admissible at trial. Until it becomes clear whether Williams intends to testify at trial or what evidence he will attempt to introduce in his defense, or what arguments Williams intends to make in his own defense, we will not know whether the proffer statement would be admissible against him at trial.
>
> Moreover, if one of the exceptions does apply, the proffer statement still may be admissible at a joint trial if the government can sufficiently redact the statement so that it does not implicate McLaughlin in the crime.

(*Id*. at 4-5.)

**B.     Applicable Precedent**

McLaughlin's motion is premised on his rights under the Sixth Amendment of the United States Constitution. The Sixth Amendment guarantees a criminal defendant's right "to be confronted with the witnesses against him; . . ." U.S. Const. amend VI. Included within this right is ability to cross-examine witnesses. *See United States v. Hardwick*, 544 F.3d 565, 572 (3d Cir. 2008) (citing *Pointer v. Texas*, 380 U.S. 400, 404, 406-07, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965)). Nevertheless, a witness's statement implicates the Confrontation Clause only if it is testimonial. *See United States v. Berrios*, 646 F.3d 118, 126 (3d Cir. 2012) (citing *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006); *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)). Thus, while "using a non-testifying codefendant's confession violates a defendant's rights under the Confrontation Clause," *United States v. Shavers*, 693 F.3d 363, 395 (3d Cir. 2012) (citing *Bruton*, 391 U.S. at 127-28, 88 S. Ct. 1620), "*Davis* and *Crawford* . . . limit *Bruton* to testimonial statements." *Berrios*, 676 F.3d at 128 (citing *United States v. Wilson*, 605 F.3d 985, 1017 (D.C. Cir. 2010)).

In support of his motion, McLaughlin relies on *Bruton*, 391 U.S. 123, 88 S. Ct. 1620,

7

and its progeny, as well as a number of post-*Bruton* decisions from the United States Court of Appeals for the Third Circuit. In *Bruton*, the Supreme Court held that the introduction of a non-testifying defendant's out-of-court statement, which directly implicated his co-defendant by name, violated the Confrontation Clause right of the co-defendant. 391 U.S. at 123-24, 88 S. Ct. 1620. Although the jury was clearly instructed not to consider the confession in determining the co-defendant's guilt, the Court found that it could not "accept limiting instructions as an adequate substitute for [the] constitutional right of cross-examination." *Id*. at 137, 88 S. Ct. 1620. Thus, even though a reviewing court may presume that a jury can and will follow the trial judge's instructions, the Court noted that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Id*. at 135, 88 S. Ct. 1620. In those situations, the Court maintained, "the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant," may be "devastating to the defendant." *Id*. at 135-36, 88 S. Ct. 1620.

The Supreme Court refined *Bruton*'s application nineteen years later when it decided *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987). In *Richardson*, the Court limited *Bruton* when it held that "the Confrontation Clause is not violated by the admission of a non[-]testifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id*. at 211, 107 S.Ct. 1702. In reaching that holding, the Court emphasized that a defendant is deprived of his or her confrontation rights in situations where "the codefendant's confession 'expressly implicate[s]' the defendant as his accomplice." *Id*. at 208, 107 S. Ct. 1702 (citation and internal quotation marks omitted). Unlike the confession in *Bruton*, the confession in *Richardson* "was not

8

incriminating on its face, and became so only when linked with evidence introduced later at trial. . . ." *Id*. at 208, 107 S. Ct. 1702. The Court, however, expressed "no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." *Id*. at 211 n.5, 107 S. Ct. 1702.

Most recently, in *Gray v. Maryland*, 523 U.S. 185, 197, 118 S. Ct. 1151, 140 L. Ed. 2d 294 (1998), the Supreme Court held that "the confession here at issue, which substituted blanks and the word 'delete' for the petitioner's proper name, falls within the class of statements to which *Bruton*'s protections apply." In reaching this holding, the Court reasoned that "[r]edactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration, however, leave statements that, considered as a class, so closely resemble *Bruton*'s unredacted statements that, in our view, the law must require the same result." *Id*. at 192, 118 S. Ct. 1151. The Court suggested that a jury will frequently react the same to an unredacted confession and a confession redacted in the *Gray* manner since the jury could easily ascertain that the confession refers to the defendant. *Id*. at 193, 118 S. Ct. 1151. The Court emphasized that the juror "need only lift his eyes to the [co-defendant], sitting at counsel table" to determine whom the redaction refers. *Id*. at 193, 118 S. Ct. 1151.

Since *Gray* was decided by the Supreme Court, the Third Circuit has had the opportunity on multiple occasions to address issues related to the constitutionality of the admission of a non-testifying defendant's statement that incriminated a co-defendant. For example, in *United States v. Richards*, 241 F.3d 335, 341 (3d Cir. 2001), the defendant's confession stated that he planned the robbery at issue with a "friend." The prosecutor then elicited additional testimony that the co-defendants were friends. *See id*. The Third Circuit held that the reference to the defendant's "friend was just as blatant and incriminating of [the co-defendant] as the word 'deleted' in the *Gray* case." *Id*.

9

Three years later, in *Priester v. Vaughn*, 382 F.3d 394, 399 (3d Cir. 2004), the Third Circuit distinguished *Richards* in finding that substitutions such as "the other guy," "someone," "someone else," "the guy," and "another guy" did not violate the Confrontation Clause when there were "at least fifteen perpetrators in various cars involved in the shooting." Thus, unlike in *Richards* where "the word 'friend' unequivocally pointed to Richards," *Priester* involved so many perpetrators that "the phrases 'the other guy' or 'another guy" are bereft of any innuendo that ties them unavoidably to [the defendant]." *Id*. at 401. Stated differently, "[i]n *Richards*, the replacement was tantamount to an explicit reference to the co-defendant; the same cannot be said for the redaction in the instant case." *Id*.

Next, in *United States v. Hardwick*, 544 F.3d 565, 567 (3d Cir. 2008), the Third Circuit addressed whether "admission of [a] proffer statement violated the Confrontation Clause rights of other defendants who were implicated in that proffer statement." In *Hardwick*, a federal grand jury issued an eight count superseding indictment naming four individuals as defendants. *See id*. at 568. Before trial, one defendant, Murray, entered into a proffer agreement with the Government. *See id*. at 568-69. Under the proffer agreement, the Government agreed not to use Murray's statement against him at trial in its case-in-chief. *See id*. at 569. An exception to the proffer agreement, however, provided that it could be used if the Government needed "to rebut any evidence or statements offered on Murray's behalf." *Id*. At trial, the Government was permitted to introduce the proffer statements after Murray breached the terms of the agreement. *See id*. But, in order to allay any Confrontation Clause concerns, the district court required that all references to Murray's co-defendants be redacted and replaced with neutral terms. *See id*.

On appeal, the court addressed the co-defendants' argument that admission of the statement violated their rights under the Confrontation Clause of the Sixth Amendment. *See*

*id*. The Third Circuit, after reviewing the Supreme Court and Third Circuit precedent discussed above, recognized that:

> What these decisions underscore is that the nature of the linkage between the redacted statement and the other evidence in the record is vitally important in determining whether a defendant's Confrontation Clause right has been violated. Even redacted statements will present Confrontation Clause problems unless the redactions are so thorough that the statement must be linked to other evidence before it can incriminate the co-defendant.

*Id*. at 573 (citations omitted). Because the redacted references in *Hardwick* referred directly to Murray's co-defendants' existence, and since Murray exercised his right not to testify at trial, the Third Circuit found a violation of the Confrontation Clause. *See id*. Nevertheless, although the Third Circuit found that the district court erred in admitting the proffer statements, the error was harmless because the evidence in the case "was more than sufficient to support the jury's verdict, even without the offending proffer statements." *Id*. at 574.

Shortly after it decided *Hardwick*, the Third Circuit, following the denial of a 28 U.S.C. § 2254 petition, granted a certificate of appealability on a number of issues, including, "whether the District Court erred in denying Appellant's claim that the trial court violated his right to a fair trial by admitting the statement of his non-testifying co-defendant." *Vazquez v. Wilson*, 550 F.3d 270, 276 (3d Cir. 2008). In *Vazquez*, two individuals, Vazquez and Santiago, were charged with a number of offenses, including first-degree murder, for the death of an individual from a single gunshot wound. *See id*. at 272-73.[1] Santiago was arrested in the aftermath of the shooting, at which time he gave a statement where he admitted to being present at the time of the shooting. *See id*. at 273. Santiago further stated that Vazquez was the shooter and that he was surprised when Vazquez opened fire. *See id*. At trial, Vazquez testified that he was not the shooter, while Santiago exercised his

---

[1] For reasons not explained to the Third Circuit, a third individual who was present during the shooting, Rivera, was not a defendant at trial. *See id*. at 273.

11

right not to testify. *See id*. Nevertheless, over Vazquez's objection, the trial court permitted a redacted version of Santiago's statement to be read to the jury substituting "my boy" or "the other guy" for the names of Vazquez and Rivera. *See id*. at 274. Vazquez was ultimately convicted of first-degree murder, aggravated assault, and two firearms-related charges. Santiago was acquitted on all counts. *See id*. at 275.

The *Vazquez* Court synthesized the aforementioned precedent as:

> the teaching of these cases dealing with the extrinsic evidence issue culminating in *Hardwick* may be that there can be a *Bruton* violation in either of two situations. The first basis for a violation would be if the trial court erroneously admitted into evidence or allowed the use at trial of a statement that on its face incriminated the objecting defendant. The second basis for a violation would be if the court admitted into evidence or allowed the use at trial of a statement that became incriminating when linked with other evidence in the case.

*Id*. at 279. Under either approach, the Third Circuit noted that there was a *Bruton* violation in *Vazquez*. Specifically, the Court found that since there "were only two possible shooters under Santiago's statement," the jury was "almost certain to conclude that the individual Santiago described in his redacted statement as 'my boy' or 'the other guy' as the shooter was Vazquez because Rivera was not on trial and the Commonwealth argued that Vazquez fired the fatal shot." *Id*. at 281 (citing *Hardwick*, 544 F.3d at 573). Accordingly, the Third Circuit reversed the order of the district court denying Vazquez's petition for habeas corpus relief. *See id*.

**C.    Analysis**

Upon consideration of the aforementioned precedent, McLaughlin has satisfied his "heavy burden" justifying severance in this case. In resolving a motion for severance, "a trial court should balance the public interest in joint trials against the possibility of prejudice inherent in the joinder of defendants." *Eufrasio*, 935 F.2d at 568.[2] "Public interest in judicial

---

[2]    The Third Circuit reviews the denial of a motion to sever for abuse of discretion. *See Eufrasio*, 935 F.2d at 568. Thus, "[i]n reviewing orders denying severance

12

economy favors joint trials where, [as here], the same evidence would otherwise be presented at separate trials of defendants charged with a single conspiracy." *Johnson v. Tennis*, 549 F.3d 296, 302 (3d Cir. 2008) (citing *Eufrasio*, 935 F.2d at 568).

In this case, however, the public interest in a joint trial of Williams and McLaughlin is outweighed by the possibility of prejudice that Williams' proffer statement will violate McLaughlin's Sixth Amendment Confrontation right. As set forth under *Bruton* and its progeny, and as subsequently interpreted by the Third Circuit, a *Bruton* violation can occur if a statement is admitted into evidence at trial that on its face incriminates the objecting defendant. *Gray*, 523 U.S. at 196, 118 S. Ct. 1151. Here, the incriminating nature of Williams' proffer statement, which is set forth in detail in the Affidavit of Probable Cause, (Doc. 2), is apparent on its face. Indeed, a cursory review of the proffer statement shows Williams clearly implicates McLaughlin in the alleged murder-for-hire plot, as McLaughlin is named in the statement in excess of twenty times. Thus, admission into evidence at trial of the incriminating proffer statement would present a clear *Bruton* issue.

Furthermore, while the Government suggests that the statement may be subject to redaction to avoid implicating McLaughlin in the charged offenses, it is difficult to envision substitutions, redactions, or alterations to the statement that would afford McLaughlin his constitutional rights under controlling precedent. In this case, the alleged crime involves only two participants. Similar to the facts discussed by the Third Circuit in *Richards*, *Hardwick*, and *Vazquez*, the jury would be almost certain to conclude that the proffer, even if presented with a redacted version of Williams' statement, to be referring to McLaughlin,

---

> under Rule 14, this Court must first determine from the record, as it existed when the motion was made, what trial developments were then reasonably foreseeable, and in that light decide whether the district court abused its discretion in denying the severance motion." *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992) (citing *United States v. Sandini*, 888 F.2d 300, 305-06 (3d Cir. 1989), *cert. denied*, 494 U.S. 1089, 110 S. Ct. 1831, 108 L. Ed. 2d 959 (1990)).

the only other defendant. Thus, it would "be facially obvious with respect to the person identified." *Vazquez*, 550 F.3d at 282 (citing *Richards*, 241 F.3d at 341). This case, therefore, is one that presents "a serious risk that a joint trial would compromise a specific trial right of one of the defendants" warranting severance. *Urban*, 404 F.3d at 775 (quoting *Zafiro*, 506 U.S. at 539, 113 S. Ct. 933).

The Government has not addressed in detail the potential *Bruton* issue in this case. Instead, the Government, as set forth above, takes the position that it would be premature to order severance until it becomes clear whether the proffer statement would be admissible against Williams at trial. While it is not certain at this time that the Government will attempt to introduce the statement at trial, it is reasonably foreseeable that developments at trial, coupled with the terms of the proffer agreement, will result in the Government seeking to introduce Williams' statement, as the agreement provides that the Government can introduce the statement if it makes a "good faith determination" that Williams was not candid, truthful, or withheld material evidence, or if evidence offered on Williams' behalf is materially inconsistent with his prior statement. (Doc. 65, 2-3.)

Moreover, waiting to resolve the severance motion until Williams' trial strategy becomes apparent could undermine the benefits of judicial economy joint trials are meant to protect. Based on the terms of the proffer agreement, whether the Government will attempt to introduce the statement will depend on the arguments and evidence presented by Williams at trial. If resolution of McLaughlin's request for severance is reserved until Williams' arguments and theory of his defense are apparent at trial, the principle of judicial economy on which the joinder rules are based would be comprised. That is, since admission of the statement at a joint trial would implicate McLaughlin's Sixth Amendment rights absent a decision by Williams to testify at trial, which would likely result in McLaughlin seeking a mistrial, reserving judgment on the severance request until trial would frustrate

14

the goal of joinder of avoiding the unnecessary use of judicial resources.

In addition, Judge Norma Shapiro of the United States District Court for the Eastern District of Pennsylvania recently addressed a motion to sever in a case involving proffer statements provided by two defendants. *See United States v. Singleton*, No. 11-76, 2012 WL 568715, at *2 (E.D. Pa. Feb. 22, 2012). In opposing the defendants' motion to sever, the Government argued that "each defendant's proffered statements will be offered only if that defendant decides to testify, or if that defendant's counsel makes representations materially different from statements made or information provided during the proffer." *Id*. at *1. Judge Shapiro, after expressing "serious concerns about the resulting *Bruton* problem," and finding that the government's "proposed redactions [did] not cure the *Bruton* problem," granted the motion for severance because of the "serious risk that a joint trial will compromise [the defendant's] Sixth Amendment right of confrontation . . . ." *Id*. at *2. Here, just as in *Singleton*, it is not certain at this time whether the Government will attempt to introduce Williams' proffer statement at trial. Nevertheless, the serious risk that a joint trial will compromise McLaughlin's confrontation rights outweighs the advantage of joinder in terms of judicial economy.

In sum, McLaughlin has a made a sufficient showing to justify severance of the charges against him from those of his co-defendant. While the public interest in judicial economy generally favors joint trials in cases involving conspiracy allegations, there is a serious risk that a joint trial will compromise McLaughlin's Sixth Amendment rights. Thus, balancing the possible prejudice to McLaughlin against judicial economy concerns weighs in favor of severance. The charges against McLaughlin will therefore be severed from those charges against his co-defendant pursuant to Rule 14 of the Federal Rules of Criminal Procedure.

### IV. Conclusion

For the above stated reasons, Defendant Edward McLaughlin's motion to sever will be granted.

An appropriate order follows.

March 13, 2013 /s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge