**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA

v.

EDWARD McLAUGHLIN,

      Defendant.

NO. 3:CR-12-0179

(JUDGE CAPUTO)

### MEMORANDUM

Presently before the Court is the Motion to Withdraw Plea (Doc. 200) filed by Defendant Edward McLaughlin ("Mr. McLaughlin").  Mr. McLaughlin seeks to withdraw his guilty plea to the charges of conspiracy to use interstate facilities in the commission of a murder-for-hire, in violation of 18 U.S.C. § 1958; carrying or possessing a firearm during and in relation to, or in furtherance of a crime of violence as an aider and abettor, in violation of 18 U.S.C. § 924(c) and 2; and shipping a firearm and ammunition after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).  He does so on the basis that an FBI Agent promised him the FBI would investigate his ex-wife (and the alleged target of the murder) for sexually abusing some of their children in exchange for his guilty plea.  He states that he lied to me during the entire plea colloquy about his guilt and the questions germane to whether his plea was voluntary, and that he did so because it was to save his kids.

This case undermines the integrity of the plea colloquy, which is carefully designed to ascertain that a plea of guilty is knowing and voluntary.  The defendant treats the oath and the process with less solemnity than it deserves.  Indeed, the oath is the very foundation of the integrity of all testimonial evidence including what is testified to at a plea colloquy.  What occurred here cannot be met with judicial approval.  Mr. McLaughlin's motion to withdraw his guilty plea will be denied.

## I. Background

**A.     Relevant Factual Background**

On September 10, 2013, a federal grand jury returned a nine-count Third Superseding Indictment against Defendant McLaughlin. (Doc. 145.) The Third Superseding Indictment charged Mr. McLaughlin with: conspiracy to use interstate facilities in the commission of a murder-for-hire, in violation of 18 U.S.C. § 1958 (Count 1); solicitation to commit a crime of violence, in violation of 18 U.S.C. § 373 (Count 2); carrying or possessing a firearm during and in relation to, or in furtherance of a crime of violence as an aider and abettor, in violation of 18 U.S.C. § 924(c) and 2 (Count 3); shipping and transporting a firearm and ammunition while being subject to a court order, in violation of 18 U.S.C. § 922(g)(8) (Count 4); shipping a firearm and ammunition after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1) (Count 5); transferring in interstate commerce a firearm with knowledge that it would be used in a crime of violence, in violation of 18 U.S.C. § 924(h) (Count 6); shipping and transporting in interstate commerce a firearm and ammunition knowing or having reason to believe that a felony is to be committed therewith, in violation of 18 U.S.C. § 924(b) (Count 7); not being a licensed importer, dealer, or collector of firearms and transferring, giving, or transporting a firearm to another person in another state who is not a licensed importer, dealer or collector of firearms, in violation of 18 U.S.C. § 922(a)(5) (Count 8); and solicitation to commit a crime of violence- attempting to forcibly tamper with a witness, in violation of 18 U.S.C. § 373 (Count 9).

On September 30, 2013, the day trial was scheduled to commence, Mr. McLaughlin pled guilty to Counts 1, 3, and 5 of the Third Superseding Indictment.  The Plea Agreement was signed by Mr. McLaughlin, his former attorney, Todd Henry ("Mr. Henry"), and Assistant United States Attorney Francis P. Sempa ("Mr. Sempa"). (Doc. 162.) In connection with his

guilty plea, Mr. McLaughlin signed a Statement of Defendant. (Doc. 163.)  The Statement of Defendant provides: "I am aware that, by entering a plea of guilty, I am admitting that what the Government says about me in Counts, 1, 3, and 5 of the Third Superseding Indictment is true and that I did, in fact, commit the offenses with which I am charged." (*Id*. at ¶ 5.)  Before the guilty plea hearing, Mr. McLaughlin also agreed to give a full confession to the Government. (Doc. 191, 24:21-28:7.)  FBI Special Agent Larry Whitehead ("Agent Whitehead") set forth the salient points of that confession on-the-record at the guilty plea hearing, and Mr. McLaughlin admitted that the facts stated in the confession were true, that he was read his rights and understood his right to remain silent before waiving it, and that he waived that right in the presence of his counsel. (*Id*. at 28:19-29:6.)  And, after the Government outlined the facts that it would produce at trial to satisfy the elements of the three charged offenses to which he was pleading guilty and Agent Whitehead summarized the confession, Mr. McLaughlin pled guilty to Counts 1, 3, and 5 of the Third Superseding Indictment. (*Id*. at 29:7-16.)

**B.     Mr. McLaughlin's Motion to Withdraw his Guilty Plea**

Prior to sentencing, Mr. McLaughlin, through newly retained counsel, filed the instant motion to withdraw his guilty plea. (Doc. 200.)  The motion is based on the claim that the guilty plea was induced by an unfulfilled or unfulfillable promise. (*Id*.)  As stated in Mr. McLaughlin's three paragraph Memorandum of Law in support of his motion:

> According to Mr. McLaughlin's prior attorney, the Federal authorities agreed to investigate allegations involving Mr. McLaughlin's wife if he entered a guilty plea.   Mr. McLaughlin and his counsel are unaware of any attempts to investigate Mr. McLaughlin's wife. Since this promise has gone unfulfilled, and Mr. McLaughlin would not have pled guilty without this promise, it would be fair and just to allow him to withdraw his plea.  In addition, Mr. McLaughlin has consistently denied the Government's allegations in this matter.  As such, Mr. McLaughlin has established appropriate grounds to withdraw his plea under Federal law  . . . .

(Doc. 202, 2.)

The Government filed a timely brief in opposition to Mr. McLaughlin's motion.  (Doc.

3

205.)  The Government argues that the motion should be denied as frivolous.  First, the Government contends that contrary to Mr. McLaughlin's assertions, at no time was he promised that his ex-wife would be investigated as a condition of the parties' agreement. In support, the Government submits the affidavit of Mr. Henry, which provides that "[a]t no time prior to or during the entry of Edward McLaughlin's guilty plea, did I inform Mr. McLaughlin that federal authorities agreed to investigate allegations involving his ex-wife in return for or as a condition of his guilty plea." (Doc. 205.)  Mr. Henry also states that federal authorities did not promise or agree to investigate Mr. McLaughlin's ex-wife in return for a guilty plea. (*Id.*)  The Government also attaches affidavits from the two agents that interviewed Mr. McLaughlin, Agent Whitehead and FBI Task Force Officer Timothy Harding ("Task Force Officer Harding"), and both agents assert that at no time prior to the entry of Mr. McLaughlin's plea was he promised that his ex-wife would be investigated as a condition of and/or in return for the guilty plea. (*Id.*)  Second, the Government argues that the record demonstrates that Mr. McLaughlin's guilty plea was both knowing and voluntary. In particular, the Government emphasizes that the Plea Agreement, the Statement of Defendant, and the guilty plea colloquy all indicate that Mr. McLaughlin acknowledged that his plea was not based on any promises or inducements other than those contained in the parties' written agreement.

**C.     July 9, 2014 Evidentiary Hearing**

A hearing was held on Mr. McLaughlin's motion to withdraw his guilty plea on July 9, 2014.  At that hearing, the first witness called by Mr. McLaughlin was Mr. Henry.  Mr. Henry testified that at no point on September 30, 2013 did any agent or official of the Government promise that an investigation would be conducted of Mr. McLaughlin's ex-wife. Mr. Henry also stated that there was never an agreement or promise by the Government to investigate allegations of sexual abuse against Mr. McLaughlin's ex-wife in exchange for

4

and/or as a condition to Mr. McLaughlin entering a guilty plea. Mr. Henry did testify, however, that during or after Mr. McLaughlin provided his confession to Task Force Officer Harding and Agent Whitehead, Task Force Officer Harding indicated that it sounded like there might be something to Mr. McLaughlin's allegations against his ex-wife. Additionally, Mr. McLaughlin presented recordings of conversations between himself and Mr. Henry while he was in the Columbia County prison following the entry of his guilty plea. From those conversations, Mr. Henry stated that there had been a hope that there would be an investigation regarding the allegations of sexual abuse against Mr. McLaughlin's ex-wife. But, Mr. Henry reiterated that there was not a representation or promise of an investigation of Mr. McLaughlin's ex-wife in exchange for a plea of guilty. Mr. McLaughlin also presented a letter sent to Mr. Henry dated February 1, 2014 instructing him to have the FBI investigate sexual abuse as per the plea agreement. Mr. Henry was also questioned by defense counsel during the hearing about whether he counseled Mr. McLaughlin as to an expected sentence if he pled guilty. According to the evidence submitted at the evidentiary hearing, Mr. Henry indicated that he had hoped that Mr. McLaughlin would receive an eight-year sentence following the entry of his guilty plea.

On cross-examination by the Government, Mr. Henry testified that he reviewed the Plea Agreement and Statement of Defendant with Mr. McLaughlin, and that both of these documents indicated that there were no promises made other than those expressly set forth therein. Mr. Henry also stated that Task Force Officer Harding made a comment regarding Mr. McLaughlin's allegations of sexual abuse only after Mr. McLaughlin gave a confession.

The defense also presented the testimony of Mr. McLaughlin's sister, Maureen McLaughlin ("Ms. McLaughlin"), at the July 9, 2014 hearing. Ms. McLaughlin was in the courtroom on September 30, 2013 when her brother pled guilty. According to Ms. McLaughlin, she was told by Mr. Henry that her brother was entering a guilty plea because

he was guilty and it was the only way he was going to get an investigation of his ex-wife. Ms. McLaughlin also testified that she spoke to Task Force Officer Harding on September 30, 2013.   Task Force Office Harding, Ms. McLaughlin testified, stated that there was something wrong in Mr. McLaughlin's ex-wife's household and that he would personally investigate the allegations of sexual abuse.   Ms. McLaughlin also testified that while the agreement to investigate the allegations of sexual abuse was not mentioned on-the-record when her brother pled guilty, she was informed by Mr. Henry that this was because the agreement had to be off-the-record.   But, Mr. Henry reiterated to Ms. McLaughlin that he had a promise that an investigation would be conducted.   Ms. McLaughlin further testified that she was told by Mr. Henry that her brother would probably get sentenced to a five to eight year term of imprisonment.   Ms. McLaughlin's son Jason Salamone similarly testified at the July 9, 2014 hearing that Mr. Henry indicated that Mr. McLaughlin would likely get a five to eight year sentence in view of the fact that he is completely disabled.

Mr. McLaughlin was the final witness to testify in support of his motion to withdraw his guilty plea.   Mr. McLaughlin testified that the morning of the hearing he was informed by Mr. Henry that he got what he wanted, an FBI investigation of the rape of his son.   He also testified that he was told by Mr. Henry that he would get five years in prison, and that there was an eighty-five percent (85%) chance he would be out in two years.   Additionally, Mr. McLaughlin testified that he was told by Task Force Officer Harding in the jury room prior to pleading guilty that if he pled guilty there would be an investigation of the sexual abuse allegations.   Mr. McLaughlin also asserted that Task Force Officer Harding stated that he had spoken with his son and his demeanor indicated signs of sexual abuse. Additionally, Mr. McLaughlin testified that he never read the plea agreement prior to signing it, and that he was only shown one paper by Mr. Henry and instructed to sign it.   Mr. McLaughlin further testified that he lied under oath during the guilty plea colloquy when he

was asked questions about his guilty plea, stating that he would lie to "Jesus himself" to save his children.

In opposition to Mr. McLaughlin's motion, the Government first called Task Force Officer Harding.   Task Force Officer Harding testified that at the beginning of Mr. McLaughlin's confession on September 30, 2013, Mr. Henry reviewed the FBI waiver of *Miranda* rights form with Mr. McLaughlin and that form was then signed by Mr. McLaughlin, Mr. Henry, Agent Whitehead, and Task Force Officer Harding.   The interview lasted approximately thirty or forty minutes.   During that interview, Mr. McLaughlin was asked to explain in detail about the attempt to have his ex-wife murdered.   At some point in the interview, Task Force Officer Harding and Mr. McLaughlin were alone after Mr. Henry left the room and Agent Whitehead left to speak with Mr. Sempa.   Once they returned, Mr. McLaughlin detailed the facts and Agent Whitehead took down Mr. McLaughlin's statement. Task Force Officer Harding testified that Mr. McLaughlin was very emotional during this interview, and that he repeatedly referenced the allegations of sexual abuse.   Task Force Officer Harding also testified that there was no promise for an investigation of the alleged abuse, nor did he represent that he or the FBI would conduct an investigation of those allegations.   He similarly testified that he never heard Mr. Henry indicate to Mr. McLaughlin that the FBI was going to investigate the allegations of sexual abuse.   Task Force Officer Harding did recall, however, saying something to the effect that it did not make sense that Mr. McLaughlin's child had been to the emergency room in excess of 100 times.   Task Force Officer Harding further indicated that he did not recall ever speaking a word to Ms. McLaughlin on September 30, 2013.

On cross-examination, Task Force Officer Harding testified that in 2014 he began a sexual abuse investigation based on Mr. McLaughlin's allegations against his ex-wife. Task Force Officer Harding testified that he commenced the investigation because of the

oath he took as a law enforcement officer and not because a promise was made to Mr. McLaughlin. According to Task Force Officer Harding, the investigation, which lasted two weeks, involved speaking to DYFS (the Division of Youth and Family Services) and Kelly Magee, a child psychologist. Task Force Officer Harding closed the investigation at that time after concluding that the allegations were unfounded. Task Force Officer Harding stated that he spoke to Ms. Magee because Mr. McLaughlin stated in a recorded phone conversation from prison that Ms. Magee had indicated that the children should be removed from his ex-wife's household.

Agent Whitehead also testified at the July 9, 2014 hearing. Agent Whitehead stated that during the interview on September 30, 2013, he took notes while Task Force Officer questioned Mr. McLaughlin. Agent Whitehead testified that he made no promises about an investigation, and he did not hear Task Force Officer Harding make such a promise either. He also did not hear Mr. Henry make any reference to a sexual abuse investigation. Agent Whitehead further testified that the FBI does not have the authority to conduct sexual abuse investigations. Agent Whitehead also stated that he knew that a sexual abuse investigation was conducted by DYFS, but he was unaware that Task Force Officer Harding investigated the allegations of sexual abuse.

## II. Discussion

Mr. McLaughlin seeks to withdraw his guilty plea pursuant to Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure. Rule 11(d) states:

Withdrawing a Guilty or Nolo Contendere Plea. A defendant may withdraw a plea of guilty or nolo contendere:

(1) before the court accepts the plea, for any reason or no reason; or

(2) after the court accepts the plea, but before it imposes sentence if:

(A) the court rejects a plea agreement under Rule 11(c)(5); or

(B) the defendant can show a fair and just reason for requesting the withdrawal.

8

Fed. R. Crim. P. 11(d).  "A district court must consider three factors when evaluating a motion to withdraw a guilty plea: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (citations omitted).  "This analysis requires that a district court *consider* each factor, but critically, does not make any one mandatory such that failure to establish one will necessarily dictate rejection of the motion." *United States v. Wilder*, 134 F. App'x 527, 528 (3d Cir. 2005) (emphasis in original); *United States v. Monyoukaye*, No. 10-128, 2011 WL 2433680, at *3 (M.D. Pa. June 14, 2011) ("The defendant's failure to establish one factor is not fatal to a motion to withdraw guilty plea.").  "A defendant seeking to withdraw a guilty plea bears a substantial burden of 'showing a fair and just reason for the withdrawal of his plea.'" *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011) (quoting *United States v. King*, 604 F.3d 125, 139 (3d Cir. 2010)).

## A.      Assertion of Innocence

The first factor for the withdrawal of a guilty plea under Rule 11(d)(2)(B) is whether the defendant asserts his innocence.  As to this factor, "[b]ald assertions of innocence are insufficient. . . . 'Assertions of innocence must be buttressed by facts in the record that support a claimed defense.'" *Jones*, 336 F.3d at 252 (quoting *United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001)).  "Once a defendant has pleaded guilty, he 'must then not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial.'" *Id*. at 253 (quoting *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992), *superseded by statute on other grounds as stated in United States v. Roberson*, 194 F.3d 408, 417 (3d Cir. 1999)).

Although Mr. McLaughlin did not unequivocally assert his innocence at the

evidentiary hearing when I first questioned him whether he was innocent, he ultimately indicated that he was innocent of the major charges to which he pled guilty.  But, besides baldly claiming his innocence, Mr. McLaughlin did not identify facts in the record supporting a claimed defense.  Nevertheless, as indicated by the Third Circuit, the "failure to establish one [factor] will [not] necessarily dictate rejection of the motion." *Wilder*, 134 F. App'x at 528; *see also United States v. Slayton*, 408 F.2d 559, 561 n.5 (3d Cir. 1969) ("It is not necessary for a defendant to allege that he is innocent of the crime charged, . . . However, in some situations the failure of the defendant to protest his innocence of the charge against him may be an important factor in an appellate court's refusal to disturb the district court's denial of the motion to withdraw his plea.").  This factor weighs against granting Mr. McLaughlin's motion to withdraw his guilty plea.

## B.      Strength of Reasons for Withdrawing Plea

The second factor relevant to Mr. McLaughlin's motion is the strength of his reasons for withdrawing his plea.  Mr. McLaughlin provides two reasons which he believes are sufficiently strong to justify the withdrawal of his guilty plea.  First, in his written submission, Mr. McLaughlin claimed that the withdrawal of his plea was appropriate because his plea was based on the "unfulfilled promise" that his ex-wife would be investigated for allegations of sexual abuse. (Doc. 202, 2.)  As a corollary to this basis for relief, Mr. McLaughlin's counsel argued at the evidentiary hearing that even if there was not a specific promise to investigate his ex-wife as a condition of the guilty plea, the circumstances surrounding Mr. McLaughlin's plea establish that he pled guilty based on the belief that such an investigation would occur.  As such, he argues, it would be fair and just to permit the withdrawal of his plea. Second, Mr. McLaughlin asserted at the evidentiary hearing that his former counsel's inaccurate sentencing advice constitutes a strong reason to allow the withdrawal of his guilty

plea.[1]  Specifically, testimony was presented at the evidentiary hearing that Mr. Henry indicated to Mr. McLaughlin prior to pleading guilty that he would get a sentence of five years or five to eight years, but the Presentence Investigation Report indicates that Mr. McLaughlin faces a Guideline range of twenty to twenty-five years.   In view of this discrepancy, Mr. McLaughlin contends that he has a sufficiently strong reason to withdraw his guilty plea.

Mr. McLaughlin will not be permitted to withdraw his guilty plea.  Based on the documents of record, Mr. McLaughlin's statements under oath during the plea colloquy, and the testimony and evidence presented at the July 9, 2014 evidentiary hearing, Mr. McLaughlin fails to demonstrate a sufficiently strong reason to warrant the withdrawal of his guilty plea.

First, with respect to the claim that Mr. McLaughlin only pled guilty based on the Government's purported promise that it would investigate allegations involving his ex-wife, I construe this claim as "an attack on the knowing and voluntary nature of his plea." *United States v. Olson*, 544 F. App'x 114, 118 (3d Cir. 2013).  "Principles of contract law govern the interpretation of plea agreements, and both the defendant and the government are bound by the terms of the agreement." *United States v. Bigler*, 278 F. App'x 193, 197 (3d Cir. 2008) (citing *United States v. Williams*, 510 F.3d 416, 422 (3d Cir. 2007)).  However, "[a]ny ambiguities in the agreement must be construed in favor of the defendant; in 'view of the government's tremendous bargaining power [courts] will strictly construe the text

---

[1]  The Government objected at the evidentiary hearing to Mr. McLaughlin's presentation of evidence on this claim for relief because it was not set forth in his motion for new trial.  While I agree with the Government that Mr. McLaughlin failed to raise counsel's allegedly erroneous sentencing advice in his motion, I have nevertheless considered herein whether Mr. McLaughlin is entitled to relief on this basis.  And, for the reasons set forth in the text, counsel's sentencing advice does not provide a sufficiently strong reason to permit Mr. McLaughlin to withdraw his guilty plea.

against it when it has drafted the agreement.'" *United States v. Floyd*, 428 F.3d 513, 516 (3d Cir. 2005) (quoting *United States v. Baird*, 218 F.3d 221, 229 (3d Cir. 2000)). "The defendant has the burden to establish breach of a plea agreement by a preponderance of the evidence." *United States v. Huang*, 178 F.3d 184, 187 (3d Cir. 1999) (citing *United States v. Conner*, 930 F.2d 1073, 1076 (4th Cir. 1991)). "An integration clause normally prevents a criminal defendant, who has entered into a plea agreement, from asserting that the government made oral promises to him not contained in the plea agreement itself." *United States v. Butler*, 297 F.3d 505, 513 n.8 (6th Cir. 2002); *see also United States v. Norvell*, 729 F.3d 788, 793 (8th Cir. 2013) ("An integration clause 'normally prevents a criminal defendant[ ] who has entered into a plea agreement[ ] from asserting that the government made oral promises to him not contained in the plea agreement itself.'"); *United States v. Alegria*, 192 F.3d 179, 185 (1st Cir. 1999) ("Where, as here, an unambiguous plea agreement contains an unqualified integration clause, it normally should be enforced according to its tenor."). The Third Circuit recently rejected a claim that a guilty plea was not knowing and voluntary based on a purported oral promise when that promise was not identified in the plea agreement and the plea agreement contained an integration clause. *See Olson*, 544 F. App'x at 118.

Here, the Plea Agreement, Statement of Defendant, and Mr. McLaughlin's on-the-record statements during the plea colloquy all counsel against allowing Mr. McLaughlin to withdraw his guilty plea. Significantly, the express terms of the Plea Agreement do not reference an investigation of Mr. McLaughlin's ex-wife, nor does it suggest that an investigation was a condition of the parties' agreement. Moreover, the Plea Agreement contains an integration clause, which states:

> Merger of All Prior Negotiations. This document states the complete and only Plea Agreement between the United States Attorney for the Middle District of Pennsylvania and the defendant in this case, and is binding only on the parties to this agreement, supersedes all prior understandings, if any, whether written

> or oral and cannot be modified other than in writing that is signed by all parties or on the record in Court.  No other promises or inducements have been made or will be made to the defendant in connection with this case, nor have any predictions or threats been made in connection with this plea.  Pursuant to Rule 11 of the Federal Rules of Criminal Procedure the defendant certifies that the defendant's plea is knowing and voluntary, and is not the result of force or threats or promises apart from those promises set forth in this written plea agreement.

(Doc. 162, ¶ 25.).  Thus, even if there had been an oral promise of an investigation, which the record does not establish, the written agreement would supersede this understanding. *See Olson*, 544 F. App'x at 118 ("The plea agreement contains no promises as to a concurrent supervised release sentence and if there had been any prior oral understandings, the written agreement would have superseded them.").

Similarly, the Statement of Defendant Mr. McLaughlin signed in connection with his guilty plea does not support the finding that an investigation of his ex-wife was a condition to his entry of a guilty plea. (Doc. 163.)  In that Statement, Mr. McLaughlin acknowledged that "[n]o promise, threats or any other inducements of any kind have been made to me in regard to my plea of guilty, apart from the plea agreement.  I am entering into this plea voluntarily with full knowledge of what rights I am giving up." (*Id*. at ¶ 7.)  This Statement, as with the Plea Agreement, is devoid of any indication that Mr. McLaughlin's entry of a guilty plea hinged on an investigation of his ex-wife.

Further, Mr. McLaughlin's claim of an oral promise of an investigation is belied by his statements on the record at the plea hearing.  During the plea colloquy, I questioned Mr. McLaughlin as follows:

Q:   I take it your willingness to enter a plea of guilty here is --- at least in part due to the fact that you've reached a plea agreement with the government?

A:   That is correct, sir.

Q:   All right.  Now, did you have an opportunity to read and discuss this plea agreement with Mr. Henry before you signed it?

A:   Yes, sir.

Q:   And does the plea agreement contain the complete and total understanding between you and the government?

A:   Yes, sir, it does.

Q:   Do you understand the terms of the plea agreement?

A:   Yes, sir, I do.

Q:   Has anyone made any other or different promises to you of any kind in an effort to get you to plead guilty in this case?

A:   No, sir.

. . . .

Q:   Has anyone attempted in any way to force you to plead guilty in this case?

A:   No, sir.

Q:   And are you pleading guilty of your own free will because you are guilty?

A:   Yes, sir.

(Doc. 191, 6:17-7:7, 7:20-25.) Mr. McLaughlin's statements under oath are consistent with the Plea Agreement and Statement of Defendant as they do not indicate that an investigation of Mr. McLaughlin's ex-wife was a condition of the guilty plea. Thus, he fails to establish that he pled guilty in exchange for a promise that was not memorialized in the Plea Agreement.

Mr. McLaughlin also argues that he should be permitted to withdraw his guilty plea because he believed at the time he pled guilty that the Government would conduct an investigation of his ex-wife. As to this claim, Mr. McLaughlin asserts that I need not make a credibility determination as to whether he or the Government's witnesses are telling the truth about the existence of a promise to investigate allegations of sexual abuse.[2] Restated,

---

[2]   Of course, "'[t]he good faith, credibility and weight of a defendant's assertions and those made on his behalf in support of a motion to withdraw a guilty plea are preeminently issues for the hearing court to decide.'" *United States v. Brooks*, 431 F. App'x 95, 99 (3d Cir. 2011) (alterations omitted) (quoting *United States v.*

Mr. McLaughlin suggests that I can grant his motion without concluding that the Government's witnesses testified falsely about the non-existence of a promise to investigate his ex-wife.  This is so, Mr. McLaughlin asserts, because the evidence presented at the evidentiary hearing demonstrates that he fully believed that there would be an investigation of his ex-wife if he pled guilty.  And, as he understood the words and actions of the Government's agents to mean that an investigation would take place, Mr. McLaughlin contends that it would be fair and just to allow him to withdraw his guilty plea without the need to resolve whether the Government promised to investigate the allegations against his ex-wife.

Mr. McLaughlin's belief that the Government would conduct an investigation of the sexual abuse allegations does not provide a sufficiently strong reason to permit him to withdraw his guilty plea.  According to the Third Circuit, "[w]here the record shows that 'circumstances as they existed at the time of the guilty plea, judged by objective standards, reasonably justified his mistaken impression,' a defendant must be held to have entered his plea without full knowledge of the consequences and involuntarily." *United States v. Crusco*, 536 F.2d 21, 24 (3d Cir. 1976) (citing *Mosher v. Lavallee*, 491 F.2d 1346, 1348 (2d Cir. 1974)); *United States v. Houser*, 404 F. App'x 638, 640 (3d Cir. 2010).  As such, a "mistaken belief regarding the effect of a plea agreement is a permissible basis for withdrawing the plea, provided that the defendant's mistake is reasonable." *United States v. Garba*, 285 F. Supp. 2d 504, 510 (D.N.J. 2003), *aff'd*, 128 F. App'x 855 (3d Cir. 2005) ("We are satisfied that the District Court properly exercised this discretion in a manner consistent with our Circuit's precedent.  Its denial of Garba's motion to withdraw his plea was thorough, careful and well-reasoned.  We therefore accept its conclusion."); *see also Spinelli v. Collins*, 992 F.2d 559, 561 (5th Cir. 1993) ("the law of this Circuit holds that the

*Washington*, 341 F.2d 277, 281 (3d Cir. 1965)).

defendant's subjective belief alone is not sufficient to invalidate a guilty plea."); *United States v. Doyle*, 981 F.2d 591, 596 (1st Cir. 1992) ("After all, to invalidate a guilty plea, a defendant's misimpression must, at the very least, be both objectively reasonable and related to a material matter.").

Insofar as Mr. McLaughlin contends that he pled guilty based on his mistaken belief that the Government would conduct an investigation of the allegations against his ex-wife, Mr. McLaughlin's mistake was not objectively reasonable. Indeed, as discussed in detail previously, both the Plea Agreement and Statement of Defendant are silent as to an investigation regarding the allegations of sexual abuse. Likewise, Mr. Sempa outlined the terms of the Plea Agreement during the plea hearing. Mr. Sempa's review of the terms of the agreement made no reference to an investigation of Mr. McLaughlin's ex-wife. (Doc. 191, 11:16-13:19.) And, Mr. McLaughlin did not mention on the record that such an agreement for an investigation existed after Mr. Sempa finished outlining the terms of the Plea Agreement. Moreover, as quoted above, Mr. McLaughlin also stated under oath that: (1) the Plea Agreement contained the complete and total understanding between the parties; (2) there were no other or different promises made in an effort to induce him to enter a plea of guilty; and (3) nobody attempted in any way to force him to plead guilty. (Doc. 191, 6:25-7:22.) Accordingly, in view of the on-the-record plea colloquy, as well as the terms of the Plea Agreement and the Statement of Defendant, Mr. McLaughlin's claimed mistaken belief as to the promise of an investigation of his ex-wife was not reasonable when judged by an objective standard.

However, Mr. McLaughlin claims that he was unaware that the Plea Agreement did not reference the investigation of his ex-wife because he did not read the agreement and he was only shown one page, the last page which Mr. Henry allegedly told him to sign. This is not objectively reasonable in light of the fact that Mr. McLaughlin answered "[y]es, sir" at

16

the guilty plea hearing to the question of whether he had "an opportunity to read and discuss this plea agreement with Mr. Henry before you signed it?" (Doc. 191, 6:20-24.)

Mr. McLaughlin, nevertheless, testified at the evidentiary hearing that his response to this question and others during the plea colloquy were lies, and that he did so because he would do anything to save his children. Specifically, Mr. McLaughlin testified at the evidentiary hearing that the agreement to investigate his ex-wife was part of a "side deal" and that he was instructed not to mention it during the plea colloquy. On this basis he did not disclose the "side deal" nor that he had been instructed to be untruthful with the Court. It is not clear from Mr. McLaughlin's testimony whether this alleged instruction was at the behest of the Government and/or his former counsel.

Mr. McLaughlin is not entitled to withdraw his guilty plea based on the claimed "side deal" that he claims he was instructed not to mention on-the-record during the plea colloquy. As explained by the United States Court of Appeals for the Sixth Circuit in terms applicable here:

> If [I] were to rely on [the defendant's] alleged subjective impression rather than the record, [I] would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy (which he now argues were untruthful) indicating the opposite. This [I] will not do, for the plea colloquy process exists in part to prevent petitioners such as [the defendant] from making the precise claim that is today before [me]. Where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry.

*Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (internal citation, quotation, and alteration omitted); *see also Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court."); *cf. Smith v. Anderson*, 632 F.3d 277, 282 (6th Cir. 2011) (noting that the Sixth

Circuit previously held that "even where both parties acknowledge the existence of an off-the-record agreement, silence in the face of a question as to the existence of promises outside of the plea agreement 'likely would foreclose post-conviction reliance on those promises.'").   In fact, it is the "integrity of the plea process itself [that] prevents the enforcement of off-the-record promises which are *denied* in open court by the party which later seeks to enforce them." *Smith*, 632 F.3d at 282 (emphasis in original) (citing *Ramos*, 170 F.3d at 566).   The law does not sanction nor condone dishonesty and untruthfulness in the plea colloquy process, and Mr. McLaughlin's cavalier treatment of that process cannot be met with judicial approval.   Accordingly, Mr. McLaughlin is not entitled to withdraw his guilty plea based on the claim of a "side deal" that differed from the agreement he signed and acknowledged under oath at the plea hearing.

Furthermore, while Mr. McLaughlin fails to demonstrate that the Government promised an investigation of his ex-wife in exchange for his pleading guilty, it is noteworthy that there was, in fact, an investigation of Mr. McLaughlin's allegations against his ex-wife. Specifically, Task Force Officer Harding testified at the evidentiary hearing that he conducted a two-week investigation of the sexual abuse allegations.   In connection with his investigation, Task Force Officer Harding testified that he contacted DYFS and he spoke with Kelly Magee.   Thus, had there been a secret promise or "side deal" to conduct an investigation of Mr. McLaughlin's ex-wife, a fact which is not established by the record, the Government seemingly fulfilled that obligation once Task Force Officer Harding inquired into Mr. McLaughlin's allegations of sexual abuse. *See, e.g., United States v. Shapiro*, 29 F. App'x 33, 35 (2d Cir. 2002) ("The defendant's first argument is that he should be allowed to withdraw his plea because he entered it on the admittedly mistaken belief that the government had secretly promised him to refrain from prosecuting his wife in exchange for his plea.   We doubt that the defendant's plea would have been involuntary even if he were

laboring under such a belief, given that the government in fact never prosecuted his wife.").

Second, Mr. McLaughlin argued at the evidentiary hearing that he should be allowed to withdraw his guilty plea because Mr. Henry provided erroneous sentencing advice. Evidence was presented at the evidentiary hearing that prior to the guilty plea Mr. Henry had expressed hope that Mr. McLaughlin would receive a five to eight year sentence. However, the Presentence Investigation Report indicates that Mr. McLaughlin faces a Guideline range of twenty to twenty-five years. Mr. McLaughlin thus concludes that these circumstances justify the withdrawal of his guilty plea.

Mr. McLaughlin is not entitled to withdraw his guilty plea based on Mr. Henry's alleged erroneous sentencing advice. According to the Third Circuit, "unless rising to the level of ineffective assistance of counsel, failure to correctly anticipate the sentence ultimately imposed is not a sufficient reason to withdraw a plea." *United States v. Sacksith*, 248 F. App'x 430, 435 (3d Cir. 2007) (citations omitted). And, the Third Circuit has held that "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) (citing *United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003); *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001); *Masciola v. United States*, 469 F.2d 1057, 1059 (3d Cir. 1972) (per curiam)).

Here, the Plea Agreement informed Mr. McLaughlin as to the sentencing court's discretion and his maximum potential exposure. (Doc. 162, ¶¶ 1, 15.) Mr. McLaughlin was likewise advised of my sentencing discretion during the in-court plea colloquy:

> Q:  You do understand that the terms of the plea agreement are simply recommendations to me, I'm not bound by the terms of the plea agreement? Do you understand that?
>
> A:  Yes, sir, I, do.
>
> . . .
>
> Q:  And I can impose a sentence that may be more severe than one you

expect?

A:     I understand, sir.

(Doc. 191, 7:8-11, 7:17-19.)  Mr. McLaughlin was also advised during the plea colloquy of

his maximum potential exposure:

> Q:     Okay.  Now, I am obliged to tell you what the maximum sentence is available are for each of these counts.  First, on count one, the use of interstate commerce facilities in the commission of murder for hire is ten years in prison, $250,000 fine, up to three years of supervised release and a $100 special assessment.
>
> Count three, possession and use of a firearm during and in relation to a crime of violence, aiding and abetting, that's five years mandatory minimum to life in prison, $250,000 fine, five years of supervised release, $100 special assessment.  And count five, shipping and transporting a firearm in interstate commerce, maximum ten years in prison, $250,000 fine, three years of supervised release, $100 special assessment.  Granted that these terms involve the course of a mandatory minimum of five years no matter what and a maximum of life in prison in terms of an accumulation of these three counts, do you understand that?
>
> A:     Yes, sir.

(Doc. 191, 8:9-9:1.)  Thereafter, I read the essential elements of the offenses to which Mr.

McLaughlin was pleading guilty. (*Id*. at 15:18-16:17, 16:19-17:12, 17:15-23.) After reviewing

those elements with respect to each offense, I asked Mr. McLaughlin if he was "guilty of

each of those," and he responded "[y]es, sir" as to the elements of all three charges. (*Id*. at

16:17-18, 17:3-5, 17:12-14, 17:23-25.)   Mr. Sempa then outlined the facts which the

Government would offer at trial to meet the elements of each of the three offenses, (*Id*. at

18:5-24:20), and Agent Whitehead also summarized Mr. McLaughlin's confession on-the-

record. (*Id*. at 25:2-28:7.)  I then questioned Mr. McLaughlin as follows:

Q:     Mr. McLaughlin, are the things that Mr. Sempa related true?

A:     Yes, there's more to it, but some of the highlights are.

Q:     The things Mr. Sempa related was before the agent.

A:     Oh, yes, yes, sir.

Q:     You admit those things are true?

A:     Yes.

Q:     Of course, you acknowledge the confession?

A:     Yes, sir.

(*Id*. at 28:12-23.)  And, as indicated, Mr. McLaughlin's admissions and acknowledgment of guilt all occurred under oath. (*Id*. at 3:16-17.)

Mr. McLaughlin is not entitled to withdraw his guilty plea based on Mr. Henry's sentencing advice because I "explicitly and accurately admonished [Mr. McLaughlin] regarding his maximum potential exposure and the court's discretion during the Rule 11 colloquy, [Mr. Henry's] alleged conjectures about [Mr. McLaughlin's] sentence were legally irrelevant." *United States v. Brooks*, 431 F. App'x 95, 100 (3d Cir. 2011); *see also Mustafa*, 238 F.3d at 492 ("[A]ny alleged misrepresentations that [the defendant's] former counsel may have made regarding sentencing calculations were dispelled when [the defendant] was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum.").  Such is the case because "all that the law requires is that the defendant be informed of his/her exposure in pleading guilty. The law does not require that a defendant be given a reasonably accurate 'best guess' as to what his/her actual sentence will be; nor could it, given the vagaries and variables of each defendant's circumstances and offending behavior." *Mustafa*, 238 F.3d at 492 n.5 (citing *United States v. Cleary*, 46 F.3d 307, 311 (3rd Cir. 1995)).  Mr. Henry's alleged erroneous sentencing advice therefore does not provide a sufficiently strong reason to permit Mr. McLaughlin to withdraw his guilty plea.

Notwithstanding this authority, Mr. McLaughlin asserts that he is entitled to relief pursuant to the Third Circuit's decision in *United States v. Hawthorne*, 502 F.2d 1183 (3d Cir. 1974).  *Hawthorne* is inapplicable at this point in the litigation, and, further, it stands for a proposition different than that cited by Mr. McLaughlin. (Doc. 202, 1 (stating that the

*Hawthorne* court "revers[ed] District Court's denial of motion to withdraw plea where the defendant alleged he was promised by his attorney that he would receive only a five year sentence.").)   In *Hawthorne*, the Third Circuit addressed the circumstances in which a district court should conduct a hearing on a motion to withdraw a guilty plea when a defendant asserts that he received a sentence different from what he was promised. *See Hawthorne*, 502 F.2d at 1185-88.[3]   Ultimately, the *Hawthorne* court vacated the judgment of the district court and remanded the action to the district court to permit the defendant to submit affidavits in support of his motion to withdraw his guilty plea to detail the precise nature of his claims, which would then place the district court in "a better position to judge whether a further hearing is called for." *Id*. at 1188-89.   Because an evidentiary hearing has already been held on Mr. McLaughlin's motion to withdraw his guilty plea in this case, *Hawthorne* is inapposite to the matter *sub judice* at this stage in the proceedings.

    In sum, none of the reasons proffered by Mr. McLaughlin in support of his motion-*i.e.*, the Government failed to fulfill the alleged promise to investigate his ex-wife, he

---

[3]     Specifically, in *Hawthorne*, the defendant filed a *pro se* motion to withdraw his guilty plea asserting that his counsel "promised" him he would receive a five year sentence, but he was ultimately sentenced to a ten-year term of imprisonment. *See Hawthorne*, 502 F.2d at 1185.  The defendant's motion was denied by the district court without a hearing.  On appeal, the Third Circuit concluded that "some type of hearing" is required if the defendant's motion "can be read to assert that he reasonably believed that the statements of his counsel meant that arrangements had been made with respect to the length of sentence to be imposed upon a plea of guilty . . . ." *Id*. at 1187.  Conversely, a hearing is not warranted if "counsel's statements . . . may reasonably be regarded as mere predictions of the future actions of the judge . . . ." *Id*.  Mr. McLaughlin was not entitled to a hearing under this standard because he did not allege in his motion that his counsel and the Government had an agreement or made arrangements with respect to the length of his sentence, nor did he detail such an agreement at the evidentiary hearing. Instead, the testimony at the evidentiary hearing established that this claim is based on Mr. Henry's predictions and/or conjectures as to Mr. McLaughlin's likely sentence.  Regardless, this issue is immaterial because Mr. McLaughlin has already been afforded an evidentiary hearing on his motion.

reasonably believed that he was entering a guilty plea in exchange for an investigation of his ex-wife, and/or he pled guilty as a result of allegedly erroneous sentencing advice- are sufficiently strong to justify allowing Mr. McLaughlin to withdraw his plea.  Thus, this factor also weighs against granting Mr. McLaughlin's motion to withdraw his guilty plea.

**C.       Prejudice to the Government**

Here, since Mr. McLaughlin failed to adequately assert his innocence or offer a sufficiently strong reason for allowing him to withdraw his guilty plea, I need not consider the prejudice factor because "the Government need not show such prejudice when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea."*Jones*, 336 F.3d at 255; *United States v. Martinez*, 785 F.2d 111, 116 (3d Cir.1986) ("[t]he Government is not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of a plea.").

### III. Conclusion

For the above stated reasons, Defendant Edward McLaughlin's motion to withdraw his guilty plea will be denied.

An appropriate order follows.


July 23, 2014 _____                              /s/ A. Richard Caputo_____
Date                                                          A. Richard Caputo
                                                                 United States District Judge