THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | 3:12-CR-179 |
| v. | : | (JUDGE MARIANI) |
| | : | |
| EDWARD MCLAUGHLIN, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Magistrate Judge William Arbuckle's Report and

Recommendation ("R&R") (Doc. 466) to the Defendant Edward McLaughlin's Motion to

Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 418).  Judge

Arbuckle recommends that McLaughlin's petition be granted in part & denied in part.  Upon

review of the R&R, Williams' objections thereto (Doc. 469), and all other relevant

documents, the Court will overrule all of McLaughlin's objections to the R&R and adopt

Judge Arbuckle's R&R granting in part and denying in part McLaughlin's § 2255 petition.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Judge Arbuckle summarized the factual background of this case as follows:

According to the Government's proffer during the guilty plea hearing, in June
2011, Defendant and Gary Williams were cellmates at Pike County prison.
(Doc. 191, p. 18).  During that time, Defendant solicited Mr. Williams to kill
Defendant's ex-wife, Joanna VanTine.  *Id.*  Defendant told Mr. Williams that
Ms. VanTine was sexually abusing their children.  *Id.*  Mr. Williams agreed to
kill Ms. VanTine.  *Id.*

When Mr. Williams was released from the county prison, he went to live with his girlfriend, Gloria Soto. *Id.* Mr. Williams told Ms. Soto about the murder-for-hire plan. *Id.*

In December 2011, Defendant was released from prison. (Doc. 191, p. 19). On March 5, 2012, Defendant shipped a German Mauser rifle and a box of bullets from an address in Florida to Ms. Soto's apartment in Scranton, Pennsylvania. *Id.* On March 8, 2012, the rifle and ammo arrived. *Id.* Mr. Williams went to the shooting range to practice his aim. (Doc. 191, pp. 19-20). Defendant visited Mr. Williams, accompanied him to the shooting range, and made adjustments to the rifle to improve its accuracy. (Doc. 191, p. 20).

On May 29, 2012, Mr. Williams used the rifle to shoot at Ms. Soto. (Doc. 191, p. 21). The police responded to the incident and arrested Mr. Williams. *Id.* Five or six days later, Ms. Soto told Police about the murder-for-hire plan. *Id.* The police and the F.B.I. searched Ms. Soto's apartment and seized evidence, including the rifle and the box it was shipped in. *Id.* The F.B.I. also recorded phone calls between Ms. Soto and Defendant. (Doc. 191, p. 22). Letters exchanged by Defendant and Mr. Williams were also recovered.

On June 18, 2012, the United States Government filed a criminal complaint alleging that Defendant used interstate commerce facilities in the commission of murder for hire, in violation of 18 U.S.C. § 1958.

On July 17, 2012, a grand jury in the Middle District of Pennsylvania indicted Defendant on the following three charges: (1) using interstate commerce facilities in the [commission] of murder for hire, in violation of 18 U.S.C. § 1958; (2) solicitation to commit a crime of violence, in violation of 18 U.S.C. § 373; and (3) using a deadly weapon in relation to any crime of violence, in violation of 18 U.S.C. § 924. (Doc. 10). Superseding indictments, adding a co-defendant and additional charges, were returned on August 28, 2012 (Doc. 30) ("First Superseding Indictment), April 23, 2013 (Doc. 78) ("Second Superseding Indictment"), and September 10, 2013 [(Doc. 145)] ("Third Superseding Indictment").

(Doc. 466 at 2-4).

On September 10, 2013, a federal grand jury returned a nine-count Third Superseding

Indictment (Doc. 145) against McLaughlin. On September 30, 2013, the morning of the first

2

day of trial, McLaughlin's counsel informed the trial court that McLaughlin wanted to plead guilty. (Doc. 466 at 5). That same day, McLaughlin accepted and signed a plea agreement wherein he pleaded guilty to conspiracy to use interstate facilities in the commission of a murder-for-hire in violation of 18 U.S.C. § 1958 (Count One); using, possessing, and carrying a firearm during and in relation to, and in furtherance of, a crime of violence in violation of 18 U.S.C. § 924(c) (Count Three); and shipping and transporting a firearm in interstate commerce as a convicted felon in violation of 18 U.S.C. § 922(g) (Count Five). (*See generally* Doc. 162). Immediately before pleading guilty, McLaughlin "waived his right to remain silent and agreed to give a full confession to the government," the substance of which was summarized at the change of plea hearing. (Doc. 396 at 24-28).

After his guilty plea, the procedural history of McLaughlin's case becomes quite lengthy. On February 10, 2014, McLaughlin's trial attorney, Todd Henry ("trial counsel"), filed a motion for psychiatric examination (Doc. 192) after he had McLaughlin evaluated by John Sanford Baird, Jr. Ph.D. (*See generally*, Doc. 192; Doc. 192-2; Doc. 419-1). Dr. Baird noted that although McLaughlin had previously been diagnosed with PTSD (among other things), he did not meet the criteria for a PTSD diagnosis at the time of his evaluation. (Doc. 192-2 at 5). Dr. Baird stated that McLaughlin's "predominant symptomatology at the present time is Bipolar I (manic episode)," "[h]is life has been complicated by an anti-social personality disorder," and a long history of alcohol abuse. (*Id.* at 5-7). Subsequent to filing the motion for psychiatric examination, Attorney Henry stopped representing McLaughlin

and he obtained new counsel, Brian Collins and Lawrence Krasner ("post-plea counsel"). (*See* Doc. 207; Doc. 208; *see also* Doc. 466 at 12).  In the midst of the turnover with McLaughlin's counsel, no brief in support of his motion for psychiatric examination was submitted, and the Court deemed the motion withdrawn.  (Doc. 206).

On March 18, 2014, McLaughlin's post-plea counsel filed a motion to withdraw his guilty plea (Doc. 200) on grounds that "his plea was based on a false promise and not the product of a knowing and intelligent decision to plead guilty."  (Doc. 200 at 1).  After a hearing on this matter, Judge Caputo denied McLaughlin's motion to withdraw his plea. (Doc. 247).[1]

On January 7, 2015, McLaughlin was finally sentenced to 240 months in prison, which was comprised of 120 months for the murder-for-hire conspiracy, 60 consecutive months for the 924(c) conviction, and 60 consecutive months for the shipping and transporting a firearm as a convicted felon, in addition to a three-year term of supervised release, $2,200 in restitution, and a $300 special assessment.  (Doc. 394 at 55-56).

Following sentencing, McLaughlin filed a series of appeals and 28 U.S.C. § 2255 motions.  Judge Arbuckle summarized the appellate history as follows:

> On June 25, 2016, Defendant, through a new Attorney, Melinda Ghilardi, filed a Motion to Vacate under 28 U.S.C. § 2255.  (Doc. 291).  On June 26, 2016, Attorney Ghilardi filed a Motion to Stay.  (Doc. 292).  On June 27, 2016, Defendant's Motion to Stay was granted.  (Doc. 298).  The case was stayed "pending the filing of a supplemental *pro se* motion" by Defendant.  *Id.*

---

[1] McLaughlin appealed the Court's denial of his motion to withdraw his guilty plea.  (Doc. 280).  On April 25, 2016, the Third Circuit affirmed the denial of his motion.  (Doc. 290-1).

On September 13, 2016, Defendant filed a Motion to Amend and Supplement the Record Pursuant to F.R.C.P. Rule 15(a)(1)."[ ]   (Doc. 306).  This Motion was construed both as a Motion to Supplement the Original Motion and Vacate, and as the Supplement itself, and was granted.  (Doc. 316).  In its [O]rder, the [C]ourt directed the Government to respond to Defendant's petition, effectively lifting the stay.  On August 9, 2017, the Government filed its Brief in Opposition. (Doc. 325).  On August 17, 2017, Attorney Ghilardi filed a Reply Brief limited to the *Johnson* issue.  (Doc. 326).

On August 23, 2017, Defendant filed a second motion seeking leave to amend the Original Motion to Vacate (Doc. 291).  (Doc. 328).  On September 8, 2017, Attorney Ghilardi filed a Motion requesting that the resolution of the pending Motion to Vacate (Doc. 291) be stayed until the United States Supreme Court ruled on petitions for writ of certiorari filed in *United States v. Robinson*, 844 F.3d 137 (3d Cir. 2016) and *United States v. Galati*, 844 F.3d 152 (3d Cir. 2016).  (Doc. 329).  On September 28, 2017, the Motion to Stay was granted. (Doc. 330).

On March 12, 2018, Defendant filed a Motion requesting that his *Johnson* claim in his original Motion to Vacate (Doc. 291) be withdrawn.  (Docs. 339, 340). Along with that Motion, Attorney Ghilardi filed a motion to withdraw as Defendant's Attorney.  (Doc. 341).  On March 15, 2018, the Court granted Defendant's Motion to Withdraw the § 2255 Motion and Attorney Ghilardi's motion to withdraw as counsel.  (Doc. 342, 343).

On April 26, 2019, Defendant filed a Motion requesting modification of his sentence under the First Step Act, 18 U.S.C. § 3582.  (Doc. 350).  Pursuant to Standing Order 19-1, Attorney Frederick W. Ulrich was appointed to represent Defendant.  (Docs. 351, 354).  On June 7, 2019, Defendant filed a letter advising the Court that he would not allow a public defender to represent him, and Attorney Ulrich filed a motion to withdraw. (Docs. 353, 354).  On June 11, 2019, that motion was granted.  (Doc. 355).  In its [O]rder, the Court advised Defendant that it would "consider Defendant's pro se filings (Docs. 350, 354), in due course.["]  *Id.* On June 19, 2019, the Government filed its response to Defendant's First Step Act Motion.  (Doc. 356).

On October 29, 2019, Defendant filed several *pro se* Motions requesting leave to Amend his initial § 2255 Motion.  (Docs. 363, 364, 365, 366).  On November

11, 2019, a new *pro se* § 2255 motion was transferred to the Middle District of Pennsylvania from the District of New Jersey. (Doc. 370).

On November 26, 2019, Defendant filed a Motion requesting an evidentiary hearing. (Doc. 372). Also on November 26, 2019, the Court issued an Order denying the motion to recuse and referring this case to United States Magistrate Judge Martin C. Carlson. (Doc. 373).

On December 5, 2019, Defendant filed another series of Motions, including: a "Motion to Amend and Supplement the Record Pursuant to F.R.C.P. Rule 15(a)(1) for Defendant's Initial § 2255 Motion," (Doc. [376]); a second Motion requesting Judge Caputo recuse himself, (Doc. [375]); an "Addendum" to his § 2255 Motion (Doc. 376); a Motion requesting an evidentiary hearing, (Doc. 377); Motion requesting leave to amend his § 2255 Motion (Doc. 378); a second Motion requesting his leave to amend his § 2255 Motion (Doc. 379); a Motion requesting to lift the September 2017 Stay (Doc. 380); a request for copies of the first page of several motions (Doc. 381); and a letter informing the Court that he believes someone is interfering with his mail (Doc. [385]).

Also on December 5, 2019, Judge Carlson issued an Order. In his Order, Judge Carlson: (1) conditionally appointed the Federal Public Defender's Office, or a CJA Attorney designated by that office, to represent Defendant; (2) conditionally granted all of Defendant's motions to amend or supplement his § 2255 Motion and directed appointed counsel to submit one comprehensive amended petition that addresses all of Defendant's claims. (Doc. 383). On December 9, 2020, Attorney Edward Rymsza, a private attorney on the CJA panel, was appointed to represent Defendant. (Doc. 384).

On March 17, 2020, this case was reassigned to United States District Judge Robert D. Mariani. On April 22, 2020, Judge Carlson recused himself in this case, and this case was referred to [Judge Arbuckle]. (Docs. 405, 407).

(Doc. 466 at 19-23 (footnotes omitted)).

McLaughlin filed the operative Motion to Vacate under 28 U.S.C. § 2255 on June 1, 2020, accompanied by a supporting brief. (Doc. 418; Doc. 419). After the Government filed its Brief in Opposition (Doc. 436) and McLaughlin filed its Reply (Doc. 441), Judge Arbuckle

issued the instant Report and Recommendation (Doc. 466).  McLaughlin filed objections to

the R&R, the Government filed its Brief in Opposition to McLaughlin's objections (Doc. 475),

and McLaughlin filed his Reply (Doc. 481).  The Motion is now ripe for disposition.[2]

### III. STANDARD OF REVIEW

#### a. Review of a Report and Recommendation

When objections to a magistrate judge's Report and Recommendation are filed, the

court must conduct a de novo review of the contested portions.  *Sample v. Diecks*, 885 F.2d

1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)).  This only applies, however, to

the extent that a party's objections are both timely and specific; if objections are merely

"general in nature," the court "need not conduct a de novo determination."  *Goney v. Clark*,

749 F.2d 5, 6-7 (3d Cir. 1984).  Indeed, the Third Circuit has instructed that "providing a

complete de novo determination where only a general objection to the report is offered

would undermine the efficiency the magistrate system was meant to contribute to the

---

[2] In a letter dated November 18, 2021, McLaughlin wrote to the Court requesting "that my court appointed attorney, Ed Rymsza, be relieved and I be allowed my constitutional right to proceed pro se!" (Doc. 457 at 1; *see also* Doc. 456 at 1).  At the time of McLaughlin's letter, the matter had already been placed before Judge Arbuckle and the parties were awaiting the issuance of his Report and Recommendation.  After Judge Arbuckle issued his R&R on March 1, 2022 (Doc. 466), Attorney Rymsza filed a Motion for Extension of Time Within Which to File Objections to the R&R (Doc. 467) due to "the number of issues raised, some of the particular complexities, and the need to speak with Mr. McLaughlin" and "to ensure Mr. McLaughlin's effective assistance of counsel in this matter." (Doc. 467 at 1-2).  Attorney Rymsza then filed objections to the R&R (Doc. 418) on McLaughlin's behalf without challenge from McLaughlin.  McLaughlin has filed letters to the Court addressed to Attorney Rymsza requesting that he make certain arguments or file specific motions (*see e.g.*, Doc. 480), which demonstrates that McLaughlin is operating with the understanding that Attorney Rymsza continues to represent him.  Accordingly, for all work performed by Attorney Rymsza after the November 18, 2021, letter, and certainly all work performed after the issuance of the R&R, it is clear that McLaughlin had no objection to his continued representation by Attorney Rymsza.

judicial process." *Id.* at 7.  When conducting a de novo review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F.Supp. 736, 738 (M.D.Pa. 1993). Uncontested portions of the Report and Recommendation may be reviewed at a standard determined by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7.  At the very least, the court should review uncontested portions for clear error or manifest injustice.  *See, e.g., Cruz v. Chater*, 990 F.Supp 375, 376-77 (M.D.Pa. 1998).

### b. 28 U.S.C. § 2255

A federal prisoner in custody under the sentence of a federal court may, within one year from when the judgment becomes final, move the sentencing court to "vacate, set aside, or correct" a sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a).  A federal prisoner may also file a § 2255 motion within one year from "[t]he date on which the right asserted was initially recognized by the Supreme Court, if that right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. 2255(f)(3).  A § 2255 motion may attack a federal prisoner's sentence on any of the following grounds: (1) the judgment was rendered without jurisdiction; (2) the sentence imposed was not authorized by law or otherwise open to collateral attack; or (3) there has been such a denial or infringement of the Constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.  28 U.S.C. § 2255(b).

Section 2255 does not, however, afford a remedy for all errors that may have been made at trial or sentencing. *United States v. Essing*, 10 F.3d 968, 977 n.25 (3d Cir. 1993). Rather, § 2255 permits relief for an error of law or fact constituting a "fundamental defect which inherently results in complete miscarriage of justice." *United States v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004) (citing *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Relief is available under Section 2255 only under exceptional circumstances, when the claimed errors of law are "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428, (1962). If the court determines that the sentence was not authorized by law, was unconstitutional, or is otherwise open to collateral attack, the court may vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate. *See* 28 U.S.C. § 2255(b).

Section 2255 also directs that, in some instances, the court "shall" hold an evidentiary hearing.

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). In *United States v. Booth*, 432 F.3d 542 (3d Cir. 2005), the Court of Appeals for the Third Circuit explained the court's discretion in these matters:

> Although a district court has discretion whether to order a hearing when a defendant brings a motion to vacate sentence pursuant to 28 U.S.C. § 2255,

our caselaw has imposed limitations on the exercise of that discretion. In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Government of the Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989). *See also* R. Governing § 2255 Cases R. 4(b). The District court is required to hold an evidentiary hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Id.* We have characterized this standard as creating a "reasonably low threshold for habeas petitioners to meet." *McCoy,* 410 F.3d at 134 (quoting *Phillips v. Woodford,* 267 F.3d 966, 973 (9th Cir. 2001)). Thus, the district court abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief. *Id.* at 131, 134 ("If [the] petition allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing.").

432 F.3d at 545-46.  Generally, the petitioner bears the burden of proof in § 2255

proceedings.  *See United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977).

### b. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are properly raised on collateral review

rather than on direct appeal.  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  To

succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part

test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner must

demonstrate "(1) that counsel's performance was deficient, that is, it fell below an objective

standard of reasonableness, and (2) that counsel's deficient performance prejudiced his

client."  *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (*citing Strickland*, 466 U.S. at

689-92).  The petitioner bears the burden of establishing that counsel's performance

prejudiced the defense. *Marshall v. Hendricks*, 307 F.3d 36, 89 (3d Cir. 2002).

## IV. ANALYSIS

McLaughlin asserts thirteen objections to Judge Arbuckle's R&R. (*See generally* Doc. 469; Doc. 470). McLaughlin's objections will be addressed in turn below.

First, the Court recognizes that McLaughlin agrees with, and does not object to, a number of Judge Arbuckle's recommendations. McLaughlin does not object to Judge Arbuckle's finding that "all pro se § 2255 motions filed before the June 1, 2020 amended motion to vacate should be denied as moot" because on June 1, 2020, "a comprehensive Motion to Vacate was filed by Defendant's appointed counsel." (Doc. 466 at 25). As such, the Court adopts Judge Arbuckle's recommendation that McLaughlin's pro se motions to vacate filed before June 1, 2020,[3] and McLaughlin's pro se motion (Doc. 409) requesting resolution of such motions should be denied as moot. (*See* supra n.3).

Judge Arbuckle also concluded that, in light of the controlling Supreme Court precedent and the Government's position that it "does not oppose vacating McLaughlin's conviction on Count 3, a violation of 18 U.S.C. 924(c)," (Doc. 463 at 31-32), "[t]he conviction and five year mandatory minimum sentence imposed for Count Three of the Third Superseding Indictment should be vacated." (Doc. 466 at 58); *see also United States v. Davis*, 139 S.Ct. 2319, 2336 (2019) (holding 18 U.S.C. 924(c)(3)(B) unconstitutionally vague). This Court agrees with Judge Arbuckle's analysis and thus will adopt the

---

[3] McLaughlin filed numerous motions to vacate, motions to amend and/or supplement such motions, and motions for an evidentiary hearing. The docket numbers for the motions are as follows: Doc. 339; Doc. 363; Doc. 364; Doc. 365; Doc. 366; Doc. 370; Doc. 373; Doc. 374; Doc. 376; Doc. 377; Doc. 378; Doc. 379.

recommendation to vacate McLaughlin's conviction and five-year mandatory minimum
sentence pursuant to 18 U.S.C. § 924(c).

### a. Timeliness of McLaughlin's Rehaif Claim

In his habeas petition, McLaughlin argues that his conviction and sentence pursuant
to 18 U.S.C. § 922(g)(1) should be vacated because his guilty plea is constitutionally invalid
in light of the Supreme Court's 2019 decision in *Rehaif v. United States*, 139 S.Ct. 2191
(2019).  (Doc. 419 at 14).  Judge Arbuckle rejected McLaughlin's *Rehaif* claim because it is
untimely or, in the alternative, because it is procedurally defaulted.  McLaughlin asserts
multiple objections to Judge Arbuckle's findings, each of which will be discussed below.

Section 922(g)(1) prohibits an individual "who has been convicted in any court of, a
crime punishable by imprisonment for a term exceeding one year" from possessing
firearms.  18 U.S.C. § 922(g)(1).  Section 924(a)(2) provides that anyone who "knowingly
violates" that provision is subject to imprisonment for up to ten (10) years.  18 U.S.C. §
924(a)(2).  In *Rehaif*, the Supreme Court held that "the word 'knowingly' applies both to the
defendant's conduct and to the defendant's status."  *Rehaif*, 139 S.Ct. at 2194.  Therefore,
to convict an individual of violating Section 922(g), "the Government therefore must show
that the defendant knew he possessed a firearm and also that he knew he had the relevant
status when he possessed it."  *Id.*  Importantly, the Government is not required to prove that
the defendant knew that he was prohibited from possessing firearms.  *United States v.
Boyd*, 999 F.3d 171, 183 (3d Cir. 2021) (noting that knowledge that one "could not legally

12

possess a firearm" is "a bar far higher than the Government's actual burden" (citing *Rehaif*,

139 S.Ct. at 2198; *United States v. Kaspereit*, 994 F.3d 1202, 1208 (10th Cir. 2021)));

*United States v. Maez*, 960 F.3d 949, 955 (7th Cir. 2020); *United States v. Bowens*, 938

F.3d 790, 797 (6th Cir. 2019)).  Rather, the Government must prove that the defendant

knew at the time he possessed the firearm that he had one of the statuses described in

Section 922(g), such as a prior conviction "in any court of, a crime punishable by

imprisonment for a term exceeding one year."  *Rehaif*, 139 S.Ct. at 2200; *Boyd*, 999 F.3d at

180 ("In general, the Government must show that a defendant knew he belonged to a

category of persons described by § 922(g) at the time he possessed a firearm."); *see also*

18 U.S.C. § 922(g)(1).

　　In this case, McLaughlin pleaded guilty to Count Five of the Third Superseding

Indictment, a violation 18 U.S.C. § 922(g)(1).  (Doc. 145 at 8; Doc. 396 at 17).  McLaughlin

now alleges that his conviction under § 922(g)(1) is invalid pursuant to *Rehaif* because the

Indictment "did not allege that Mr. McLaughlin knew he had a prohibited status when he

possessed [the firearm]."  (Doc. 419 at 15).  Judge Arbuckle rejected this argument on the

basis that McLaughlin's *Rehaif* claim is untimely because "*Rehaif* is not retroactive to cases

on collateral review because the new requirement that the Government prove knowledge of

status is a procedural rule clarifying the Government's burden to obtain a conviction under §

922(g)."  (Doc. 466 at 37).  McLaughlin objects to this conclusion, arguing *Rehaif*

announced a new substantive rule because it "narrowed the scope of 18 U.S.C. § 922(g)." (Doc. 470 at 3; *see also* Doc. 469 at ¶ 1).

The Supreme Court has explained that "[a] rule is substantive if it alters the range of conduct or the class of persons that the law punishes," including "decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Welch v. United States*, 578 U.S. 120, 129 (2016) (internal citations and quotations omitted). On the other hand, procedural rules "regulate only the manner of determining the defendant's culpability" such that the rules "alter the range of permissible methods for determining whether a defendant's conduct is punishable." *Id.* (internal citations and quotations omitted) (emphasis omitted). Procedural rules "merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004). "[O]nly a small subset of "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding" are given retroactive effect. *Id.* (quoting *Teague v. Lane*, 489 U.S. 288, 311 (1989) (plurality opinion)).

Here, the Court agrees with Judge Arbuckle and finds that *Rehaif* did not announce a new substantive rule of criminal procedure that applies retroactively on collateral review. (*See* Doc. 466 at 37). As explained by the Southern District of Ohio,

> *Rehaif* does not change at all those persons who can be prosecuted under § 922(g). Rather, it holds that when the Government does prosecute a person in

14

one of the prohibited categories, it must prove he or she knew that they were in that category. As to § 922(g)(1), the same class of people now as before *Rehaif* is prohibited from possessing a firearm, to wit, those people who have been convicted of a felony. Now the Government must prove that they knew they had been thus convicted, a change in the procedure at trial, not in the classes of people liable.

*United States v. Whitmire*, 2020 WL 4333480, at *2 (S.D.Oh. July 28, 2020); *see also*

*Mathis v. United States*, 2021 WL 1783285, at *3 (D.N.J. May 5, 2021) ("The Court is

persuaded more by the line of authority finding *Rehaif* is not retroactive to cases on

collateral review, that it is neither a substantive rule nor a 'watershed' rule, but a procedural

rule clarifying the Government's burden to obtain a conviction under § 922(g)."); *Chavez v.*

*United States*, 2020 WL 4430381, at *3 (D.N.M. July 30, 2020) (finding that "*Rehaif* is not

retroactively applicable on collateral review" and noting that "the majority of cases have held

that *Rehaif* is not retroactively applicable for purposes of collateral review" (collecting

cases)). Post-*Rehaif*, the "range of conduct [and] the class of persons [§ 922(g)] punishes"

remains the same. *See Welch*, 578 U.S. at 129 (quoting *Schriro*, 542 U.S. at 353). The

Court agrees with the Western District of Pennsylvania:

> In *Rehaif*, the Supreme Court clarified what the Government must prove in order to convict an individual in one of the nine prohibited categories enumerated in Section 922(g). As such, the new rule announced in *Rehaif* is a procedural rule, and not a substantive rule. Further, it is not a "watershed" rule of criminal procedure, because it does not implicate the "fundamental fairness and accuracy of the proceeding." *Wharton* [*v. Bockting*, 549 U.S. 406, 416 (2007)].

*United States v. Wood*, 2021 WL 1022693, at *6 (W.D.Pa. March 17, 2021).

Thus, the Court will overrule McLaughlin's objection to Judge Arbuckle's concluding that "*Rehaif* is not retroactive to cases on collateral review because the new requirement that the Government prove knowledge of status is a procedural rule clarifying the Government's burden to obtain a conviction under § 922(g)." (Doc. 466 at 37). Because *Rehaif* is not retroactive, the Court finds that McLaughlin's claim is time-barred. (*See* Doc. 469 at ¶ 2); *see also Mathis*, 2021 WL 1783285 at *3 ("Thus, although Petitioner filed his § 2255 motion within one year of the Supreme Court's decision in *Rehaif*, the motion nonetheless appears to be time-barred by § 2255(f)'s one-year statute of limitations.").

### b. Procedural Default on McLaughlin's **Rehaif** Claim

Assuming *arguendo* that McLaughlin's *Rehaif* claim was timely, denial of his Motion is still warranted. It appears to be undisputed that McLaughlin failed to raise the issue of whether the Government adequately alleged McLaughlin's knowledge of his felon status for the § 922(g)(1) charge in the Third Superseding Indictment. Because McLaughlin failed to raise this issue on direct appeal, it is procedurally defaulted. *Hodge v. United States*, 554 F.3d 372, 378-79 (3d Cir. 2009) ("Because collateral review under § 2255 is not a substitute for direct review, a movant ordinarily may only raise claims in a 2255 motion that he raised on direct review. Put differently, a movant has procedurally defaulted all claims that he neglected to raise on direct appeal." (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)); *see also United States v. Mitchell*, 218 F.Supp.3d 360, 366 (M.D.Pa. Nov. 10, 2016). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct

16

review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 622 (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Smith v. Murray*, 477 U.S. 527, 537 (1986)); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003).

### i. Cause and Actual Prejudice

"A defendant may surmount a default by showing cause, as well as resulting prejudice should the default be given preclusive effect." *Mitchell*, 218 F.Supp.3d at 367 (citing *United States v. Doe*, 810 F.3d 132, 153 (3d Cir. 2015). "Cause has been found to exist when a subject 'constitutional claim is so novel that its legal basis is not reasonably available to counsel' in earlier proceedings." *Id.* (quoting *Bousley*, 523 U.S. at 622). "'[F]utility cannot constitute cause if it means simply that a claim 'was unacceptable to that particular court at that particular time.'" *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).

McLaughlin objects to Judge Arbuckle's conclusion that he was "not persuaded by [McLaughlin's] argument that the failure to allege knowledge in the indictment in this case is a jurisdictional issue." (Doc. 466 at 39; Doc. 469 at ¶ 2). McLaughlin argues that his *Rehaif* claim is not procedurally defaulted because he "can show cause and prejudice to overcome any purported procedural default." (Doc. 470 at 6). According to McLaughlin, "there was a solid wall of circuit authority prohibiting Mr. McLaughlin's *Rehaif* claim at the time of his trial

17

or appeal," which "satisfies the cause standard and excuses Mr. McLaughlin's failure to advance a *Rehaif* claim before *Rehaif* was decided." (*Id.* at 6-7).

McLaughlin's argument is unavailing. Multiple courts within the Third Circuit have considered the same argument advanced by McLaughlin and have held that "arguments under *Rehaif* are not sufficiently novel in the § 2255 context, as '[t]he issue ... was percolating in the courts for years.'" *United States v. Vilella*, 2020 WL 6136139, at *3 (E.D.Pa. Oct. 19, 2020) (quoting *United States v. Correa*, 2020 WL 5517466, at *3 (E.D.Pa. Sept. 14, 2020)); *see also United States v. McLean*, 2020 WL 7384898, at *1 (E.D.Pa. Dec. 16, 2020) ("Here, it cannot be said that the question in *Rehaif* was novel where it was repeatedly litigated in circuit courts."); *United States v. Murphy*, 2020 WL 1891791, at *2 (M.D.Pa. April 16, 2020) ("The issue is *Rehaif* was percolating in the courts for years, including by the time Murphy was charged and pleaded guilty."). That McLaughlin's "claim may not have been accepted by this court or in this Circuit does not provide cause for his failure to raise it." *Murphy*, 2020 WL 1891791, at *2. The question in *Rehaif* was frequently litigated in courts across the country before the Supreme Court decided *Rehaif,* and thus it cannot be said that the question presented in *Rehaif* was so novel as to establish cause. Accordingly, McLaughlin has failed to establish cause to excuse his procedural default.

Furthermore, McLaughlin has not, and cannot, establish actual prejudice. "To show 'actual prejudice' as a result of his guilty plea, a defendant 'must show that there is a reasonable probability that, but for [the complained of] errors, he would not have pleaded

18

guilty and would have insisted on going to trial." *United States v. Duell*, 2021 WL 858445,

*2 (W.D.Pa. March 8, 2021) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *see also*

*Wood*, 2021 WL 1022693, at *11 (W.D.Pa. March 17, 2021).

McLaughlin argues that "had he been adequately advised of the true elements of §

922(g) Mr. McLaughlin could have filed a motion to dismiss or, proceed to trial on the theory

that his prior felony did not expose him to a sentence of more than one year." (Doc. 470 at

8-9). This argument rests on possibilities and speculation about what *could have* been

done prior to McLaughlin pleading guilty, which are insufficient to establish actual prejudice.

The truth is, however, that McLaughlin could have filed a motion to dismiss based on his

erroneous theory that his previous felony convictions did not expose him to a sentence of

imprisonment of more than one year. McLaughlin did not file such motion. McLaughlin was

mere minutes away from the empaneling of a jury and the beginning of his trial on the

charges to which he pleaded guilty in the above-captioned action, including the § 922(g)

offense. He had the opportunity to proceed to trial "on the theory that his prior felony did not

expose him to a sentence of more than one year," (Doc. 470 at 9), but he instead chose to

plead guilty. Speculation about what could have been and hypothesizing about the roads

not taken is insufficient to establish "a reasonable probability that, but for [the complained of]

errors, he would not have pleaded guilty and would have insisted on going to trial." *Duell*,

2021 WL 858445, *2 (quotation omitted).

McLaughlin also argues that he suffered actual prejudice because "at the time he possessed a firearm, he did not have notice that his prior conviction was for 'a crime punishable by imprisonment for a term exceeding one year.'" (Doc. 470 at 7). This argument similarly fails because McLaughlin has not demonstrated that there is a reasonable probability that he would not have pleaded guilty to violating § 922(g)(1) if he had such notice. (*See id.* at 8). Upon review of the plea colloquy transcript, it is clear that McLaughlin was advised that a Section 922 conviction requires proof that he had been convicted of a crime punishable by more than one year imprisonment, and he acknowledged this notice. This exchange took place at McLaughlin's plea colloquy:

> **The Court:** Count five, the – that is possession – in summary terms that is shipping and transporting a firearm in interstate commerce, *that you have been convicted in the court of a crime punishable by imprisonment for a term exceeding one year* and, second that you shipped or transported in interstate commerce or possessed in or affecting interstate commerce, any firearm or ammunition or you received any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. Those are the elements of that offense. Are you guilty of each of those?
>
> **McLaughlin:** Yes, sir.

(Doc. 396 at 17 (emphasis added)). Furthermore, the Government explained that it would "present evidence that Mr. McLaughlin had a prior – had prior felony convictions in Morris County, New Jersey in 2003. 2002 was the commission of the offense. 2003 was the sentence. So, therefore, at the time that he shipped the rifle in 2012 he had prior felony convictions for unlawful possession of a firearm." (*Id.* at 24). Finally, McLaughlin agreed to provide a confession to law enforcement prior to his guilty plea and when Agent Whitehead

20

summarized McLaughlin's confession at the plea colloquy, Agent Whitehead testified that

"McLaughlin also acknowledged that he had a prior felony conviction from 2002." (*Id.* at 28;

*see also id.* ("The Court: You admit those things are true?  The Defendant: Yes.  The Court:

Of course, you acknowledge the confession?  The Defendant: Yes, sir.")).

Thus, there is no credible argument that McLaughlin did not have adequate "notice"

of what the Government would be required to prove at trial.  The Court finds that there is no

reasonable probability that he would not have pleaded had the Third Superseding

Indictment alleged McLaughlin "knew he had a prohibited status when he possessed [the

gun]." (*See* Doc. 470 at 8).  Accordingly, McLaughlin failed to establish actual prejudice,

and the Court will overrule McLaughlin's objection to Judge Arbuckle's R&R.

### ii. Actual Innocence

Judge Arbuckle also evaluated McLaughlin's assertion that he could overcome the

procedural default in his *Rehaif* claim due to actual innocence.  Judge Arbuckle reasoned

that "it is unclear as to whether [McLaughlin] was aware of his status as a felon before or on

the day he possessed and shipped the rifle" because "he never spent more than six months

in prison." (Doc. 466 at 43).  Judge Arbuckle concluded that an evidentiary hearing "may be

necessary to resolve this issue." (*Id.*).  The Government disagrees, arguing, "the record,

motion, files, and the applicable law of the case affirmatively indicate that McLaughlin is not

entitled to relief.  Therefore, this court should find that McLaughlin is not entitled to an

evidentiary hearing in this matter." (Doc. 475 at 41).

"To prevent a fundamental miscarriage of justice, a Court can excuse a procedural default on a federal habeas, and consider a claim on its merits, if a petitioner can establish that he is 'actually innocent' of the crime for which he is convicted." *Wood*, 2021 WL 1022693, at *7 (citing *Smith v. Murray*, 477 U.S. 527, 537 (1986)). The Third Circuit has held that

> [t]o establish actual innocence, "a habeas petitioner must 'persuade[ ] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir. 2002) (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 1995)). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). The Supreme Court has required a petitioner to support his allegations of constitutional error with *new reliable evidence* – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851 (emphasis added); *see also Cristin*, 281 F.3d at 420. "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851; *see also Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000) (noting that the actual innocence exception "will apply only in extraordinary cases").

*Sweger v. Chesney*, 294 F.3d 506, 522-23 (3d Cir. 2002); *see Bousley*, 523 U.S. at 623-24.

Here, McLaughlin did not submit "new reliable evidence" to support his claim of actual innocence of the § 922(g)(1) conviction based on his argument that he was unaware of his status as a felon. (*See* Doc. 470 at 9; *see also* Doc. 481 at 5). The Government, on the other hand, submitted records related to McLaughlin's 2002 New Jersey felony convictions to support "McLaughlin's actual guilty knowledge," and the Government argues that "McLaughlin cannot demonstrate actual innocence but continues to demonstrate actual exploitation and manipulation of facts and law." (Doc. 475 at 32; Doc. 477). These records

show that McLaughlin pleaded guilty to four felonies in 2002 and faced a total of 16.5 years imprisonment – three counts carried a maximum sentence of five-years imprisonment and one charge carried a maximum sentence of 18-months imprisonment. (Doc. 477 at 5). McLaughlin initialed the page that listed the maximum sentence for each count and signed his name at the end of the document. (*Id.* at 5, 7).

While it is true that McLaughlin only served a four-day prison sentence on these charges, (*See* Doc. 477 at 8-9), Section 922(g)(1) is not concerned with the length of the sentence a defendant actually served on a previous conviction. By its terms, Section 922(g)(1) only requires that the crime of which the defendant is convicted is "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). It is indisputable that McLaughlin's four New Jersey felony convictions were crimes "punishable by imprisonment for a term exceeding one year." (*See* Doc. 477 at 5). It is also indisputable that McLaughlin initialed the page on which the maximum sentence was listed for each crime to which he plead guilty and that he signed the end of the document. (*Id.* at 5, 7). The records of conviction that bear McLaughlin's initials and signature demonstrate that "the Government could easily prove [McLaughlin] knew at the time he possessed the firearm that he had previously been convicted of a crime punishable by more than one year of imprisonment." *United States v. Sanabria-Robreno*, 819 F. App'x 80, 83 (3d Cir. 2020).[4]

---

[4] McLaughlin argues that "against the backdrop" of his mental health history, "it is likely that Mr. McLaughlin did not realize or remember that his prior convictions were punishable by more than one year." (Doc. 481 at 6). McLaughlin fails to support this contention with any citation to the record demonstrating that McLaughlin's mental health issues have any influence on his memory, nor does he provide caselaw citation

To further bolster McLaughlin's knowledge of his status as a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year,"), the Government submitted a portion of testimony from the trial of Gary Williams, McLaughlin's co-defendant.  There, McLaughlin's brother, John, testified that McLaughlin "called me up and asked me to purchase a gun for him and that he would send me his credit card information and an article from the magazine, and all the information about the gun." (Doc. 475-1, Gov. Ex. 2 at 110).  When asked on cross-examination why he purchased the gun for McLaughlin, John testified that McLaughlin "couldn't" "just go buy the gun himself" because "[h]e had gotten in some kind of trouble where they took his guns away ... I knew there was a problem that he could not purchase the guns."  (*Id.* at 116).  This testimony indicates that McLaughlin knew he could not purchase a gun for himself and deliberately took steps to have someone else purchase the gun on his behalf.  Moreover, McLaughlin acknowledged at his plea colloquy that he had been "convicted in the court of a crime punishable by imprisonment for a term exceeding one year[.]"  (Doc. 396 at 17).

In light of the substantial evidence that supports McLaughlin's knowledge of his prohibited status at the time he possessed the firearm at issue in this case, which includes the records from McLaughlin's 2002 New Jersey convictions and transcript excerpts from

---

to support the proposition that "[t]he explicit implication of *Rehaif* in the § 922(g) context is that individuals who have a prior conviction for a crime punishable by more than one year are innocent if they do not realize their prior conviction was punishable by more than one year."  (*Id.*).  In any event, the record evidence discussed throughout the Court's Opinion shows that McLaughlin had the requisite knowledge for a conviction pursuant to § 922(g)(1).

Gary Williams' trial submitted by the Government, it cannot be said that McLaughlin would have gone to trial instead of pleading guilty had McLaughlin's knowledge of his status been included in the Third Superseding Indictment.  Accordingly, McLaughlin has not established "actual innocence" that would excuse his procedural default and the Court is satisfied that McLaughlin "was aware of his status as a felon before or on the day he possessed and shipped the rifle," (Doc. 466 at 43), and, in the unlikely event that he was not aware of his status, the Court finds that this did not affect his substantial rights because "he has not shown a 'reasonable probability that, but for the error, he would not have entered the plea.'" *Sanabria-Robreno*, 819 F. App'x at 83 (quoting *United States v. Dominguez-Benitez*, 542 U.S. 74, 83 (2004)); *see also Greer v. United States*, 141 S.Ct. 2090, 2097 (2021) (quotation omitted) (explaining that "[i]f a person is a felon, he ordinarily knows he's a felon" because "[f]elony status is simply not the kind of thing one forgets").

In his Reply, McLaughlin compares his position with that of the defendant in *United States v. Guzmán-Merced*, 984 F.3d 18 (1st Cir. 2020).  There, the defendant had a "limited education and diagnosed learning disabilities," and "did not serve even a day in prison for his prior offenses, and the suspended sentence he was given did not exceed one year for any of the three felony counts he was convicted of."  *Guzmán-Merced*, 984 F.3d at 20.  The *Guzmán-Merced* Court determined that "[o]n this record, with at least a plausible defense for trial, there is a reasonable probability that Guzmán would not have pled guilty had he been told what the government would need to prove in order to convict him at trial."  *Id.* at

21.  Here, according to McLaughlin, McLaughlin "is in a similar situation" because "[h]e had never served a year in custody, and therefore, cannot be automatically assumed that he must have known his crimes were punishable by more than a year," and because McLaughlin "has serious mental health issues."  (Doc. 481 at 8).  Thus, McLaughlin argues, "there is reason to believe that Mr. McLaughlin would not have recalled every particular from his sentencings on the state convictions" and he "did not necessarily know that his prior convictions were for a crime punishable by more than one year."  (*Id.*).

McLaughlin's attempt to situate himself within the First Circuit's decision in *Guzmán-Merced* is unsuccessful for many reasons.  Most troubling for the Court, McLaughlin's arguments contradict the record evidence which has been analyzed at great length above.  Unlike the defendant in *Guzmán-Merced*, who had diagnosed learning disabilities and dropped out of school after failing the seventh grade twice, *Guzmán-Merced*, 984 F.3d at 19, there is no indication that McLaughlin has any learning disabilities, diagnosed or undiagnosed, and McLaughlin testified that he received "[p]ost graduate college" education.  (Doc. 396 at 3).  McLaughlin's comparison to *Guzmán-Merced* completely ignores Dr. Baird's psychological report wherein he explained that McLaughlin "scores better than 70% of the people in his age group for traditional academic abilities like reading, writing and math.  Similarly, his IQ score is estimated to be even higher (98'th percentile) at around 130!"  (Doc. 419-1 at 7).  His comparison further neglects the evidence that shows McLaughlin initialed and signed the New Jersey plea agreement detailing the maximum

26

sentences for the four crimes to which he pleaded guilty, and it ignores the testimony from McLaughlin's brother showing that McLaughlin had his brother purchase the gun for him because he knew that he could not purchase a gun himself. (*See generally* Doc. 475-1). Unlike the defendant in *Guzmán-Merced*, it is difficult to "see how a person in [McLaughlin's] shoes could plausibly think that he had a decent shot of convincing at least one juror to reasonably doubt whether he knew" his New Jersey convictions carried maximum penalties in excess of one year imprisonment. *See Guzmán-Merced*, 984 F.3d at 21. The Court's "review of the record nevertheless reveals no reason to think that the government would have had any difficulty at all in offering overwhelming proof that [McLaughlin] knew that he had previously been convicted of offenses punishable by more than a year in prison." *United States v. Burghardt*, 939 F.3d 397, 404 (1st Cir. 2019); *see also Guzmán-Merced*, 984 F.3d at 20 (citing *Burghardt*, 939 F.3d 397)).

Because McLaughlin has not established cause and actual prejudice or actual innocence, he has not overcome the procedural default barring his *Rehaif* claim. Therefore, the Court will overrule McLaughlin's objection to Judge Arbuckle's conclusion that his *Rehaif* claim is procedurally defaulted. (*See* Doc. 469 at ¶ 2). Additionally, as discussed in more detail below, McLaughlin has not established that an evidentiary hearing is necessary on any issue related to his *Rehaif* claim.[5]

---

[5] Judge Arbuckle posited that an evidentiary hearing "may be necessary to determine whether procedural default should be excused on the basis of actual innocence" because "it is not clear as to whether he was aware of his status as a felon bore or on the day he possessed and shipped the rifle." (Doc. 466 at 42-43). Ultimately, however, Judge Arbuckle concluded that no evidentiary hearing was necessary in this

### c. Ineffective Assistance of Counsel

McLaughlin objects to Judge Arbuckle's "findings, conclusions and recommendations that Mr. McLaughlin is not entitled to relief on all of his ineffective assistance of counsel claims." (Doc. 469 at ¶ 4). Each of McLaughlin's specific objections to the R&R related to his ineffective assistance claims will be discussed below.

Judge Arbuckle concluded that McLaughlin is not entitled to relief on his first claim for ineffective assistance that alleged his trial counsel was "ineffective for failing to adequately consult with Mr. McLaughlin, prepare, or investigate prior to advising Mr. McLaughlin to plead guilty the morning of trial and consequently Mr. McLaughlin's plea was unlawfully induced and involuntary." (Doc. 419 at 21; Doc. 466 at 47). Judge Arbuckle stated that McLaughlin's trial counsel's "conduct of negotiating [a] plea agreement on the morning of trial is not objectively unreasonable under these circumstances." (Doc. 466 at 47). McLaughlin objects, arguing that "there was not even a written plea offer" and "[e]verything occurred rapidly and unexpectedly the morning of trial. In fact, Mr. McLaughlin was at the courthouse ready for jury selection. He had literally minutes to consider his fate by essentially an all or nothing decision." (Doc. 470 at 9; *see also* Doc. 469 at ¶ 5). According to McLaughlin,

> More time should have been spent speaking to him about a plea and why, under the facts of this case, a plea was a better choice than the proceeding to

case. (*Id.* at 58). As explained below, this Court agrees that no evidentiary hearing is required on any claims asserted in McLaughlin's § 2255 Motion.

trial.  More than merely lukewarm advice is often required as part of counsel's
professional advice on this critical decision of entering a plea or going to trial.

(Doc. 470 at 10).

Here, McLaughlin advocates for the same end result – a guilty plea – but appears to
have wanted his trial counsel to take more time explaining why he should have taken the
plea.  This argument is insufficient to meet McLaughlin's burden under the *Strickland*
standard to show either deficiency on behalf of trial counsel or prejudice to McLaughlin.  In
the context of guilty pleas, "[i]n order to satisfy the 'prejudice' requirement [of *Strickland*], the
defendant must show that there is a reasonable probability that, but for counsel's errors, he
would not have pleaded guilty."  *Hill*, 474 U.S. at 58-59; *see also United States v. Kauffman*,
109 F.3d 186, 190 (3d Cir. 1997); *United States v. Bui,* 795 3d 363, 367 (3d Cir. 2015).
Because McLaughlin does not argue that he would not have taken the plea agreement had
trial counsel spent more time "speaking to him about a plea and why … a plea was a better
choice than [trial]," (Doc. 470 at 10), he fails to establish prejudice under *Strickland*.
Therefore, the Court will overrule McLaughlin's objection (Doc. 469 at ¶ 5) and deny
McLaughlin's ineffective assistance of counsel claim.

McLaughlin next objects to Judge Arbuckle's recommendation that this court deny
McLaughlin's ineffective assistance claim for trial counsel's alleged failure "to conduct an
investigation into Mr. McLaughlin's mental health history before advising him to enter a
plea."  (*Id.* at ¶ 6; *see also* Doc. 466 at 48; Doc. 470 at 12).  Judge Arbuckle explained,
"Defendant has not presented any evidence that Attorney Henry was aware of the nature or

extent of Defendant's mental illness when Defendant entered the plea" and "[d]uring the

change of plea hearing, Defendant testified that he had not had any recent treatment for

mental illness, was not taking any medication, and was capable of making decisions about

his personal welfare." (Doc. 466 at 48). Judge Arbuckle also noted that McLaughlin "does

not actually allege that he was not competent to stand trial or enter a plea, he does not

allege his mental state was impaired when he committed the crimes at issue." (*Id.* at 49).

In *United States v. Kauffman*, the Third Circuit stated:

> As we explained in *United States v. Gray*, 878 F.2d 702 (3d Cir. 1989), "failure
> to conduct any pretrial investigation generally constituted a clear instance of
> ineffectiveness." *Gray*, 878 F.2d at 711. *See also Code v. Montgomery*, 799
> F.2d 1481, 1483 (11th Cir. 1986) (counsel's performance fell below
> competency standard where he interviewed only one witness); *Nealy v.
> Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985) ("[A]t minimum, counsel has the
> duty to interview potential witnesses and to make an independent investigation
> of the facts and circumstances of the case."). While counsel is entitled to
> substantial deference with respect to strategic judgment, an attorney must
> investigate a case, when he has cause to do so, in order to provide minimally
> competent professional representation. *Gray*, 878 F.2d at 711.
>
> Here, Zorbaugh admitted that even though he had a letter from Kauffman's
> psychiatrist concerning Kauffman's mental condition, he did not pursue *any*
> investigation into an insanity defense. While we recognize that Zorbaugh may
> have found the strength of the government's case daunting, we can imagine no
> reasonable professional calculation which would support Zorbaugh's failure to
> conduct *any* pre-trial investigation into the facts and law of an insanity defense
> under the circumstances of the case. *See Strickland*, 466 U.S. at 690-91, 104
> S.Ct. at 2066 ("[A] court deciding an actual ineffectiveness claim must judge
> the reasonableness of counsel's challenged conduct on the facts of the
> particular case.").

*Kauffman*, 109 F.3d at 190.

Here, unlike in *Kauffman*, there is no evidence to suggest that McLaughlin's trial counsel had any knowledge of McLaughlin's mental health history prior to McLaughlin pleading guilty.  As Judge Arbuckle explained in his R&R, McLaughlin has submitted no evidence that shows his trial counsel's prior knowledge of his mental health history. McLaughlin displayed no "indicia of incompetence that would provide counsel 'reason to doubt' [McLaughlin's] ability to understand the proceedings, communicate with counsel, and assist in his own defense."  *Jermyn v. Horn*, 266 F.3d 257, 300 (3d Cir. 2001). McLaughlin's trial counsel had Dr. Baird examine McLaughlin and prepare a psychological screening report *after* McLaughlin pleaded guilty and, as described in greater detail below, the report did not raise any concerns about McLaughlin's competency.  (Doc. 419-1 at 7-9).

Given these facts, McLaughlin's trial counsel's failure to investigate McLaughlin's mental health status before he pleaded guilty was not objectively unreasonable.  Therefore, the Court will overrule McLaughlin's objection (Doc. 469 at ¶ 6) and deny McLaughlin's ineffective assistance of counsel claim based on trial counsel's failure to investigate his mental health.

McLaughlin next objects to Judge Arbuckle's conclusion that McLaughlin is not entitled to relief on his claim that his trial counsel was ineffective for failing to advise McLaughlin of "his full sentencing exposure before the change of plea hearing" because McLaughlin did not suffer prejudice.  (*Id.* at ¶ 7; *see also* Doc. 466 at 50; Doc. 470 at 15-16). The Third Circuit has explained:

31

> When addressing a guilty plea, counsel is required to give a defendant enough information "'to make a reasonably informed decision whether to accept a plea offer.'" *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)), *cert. denied*, – U.S. –, 134 S.Ct. 1340, 188 L.Ed.2d 346 (2014).   We have identified potential sentencing exposure as an important factor in the decisionmaking process, stating that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Day*, 969 F.2d at 43.  In order to provide this necessary advice, counsel is required to "know the Guidelines and the relevant Circuit precedent …" *United States v. Smack*, 347 F.3d 533, 538 (3d Cir. 2003).  However, "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where … an adequate plea hearing was conducted." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).

*Bui*, 795 F.3d at 367 (3d Cir. 2015).

Here, McLaughlin alleges that "[t]he evidence is indisputable that trial counsel provided patently unrealistic expectations and advice to Mr. McLaughlin regarding his true sentencing exposure if he entered a guilty plea." (Doc. 470 at 15).  He claims that his trial counsel "testified that he advised Mr. McLaughlin that he would likely receive between a 5 and 10 year sentence." (*Id.*).  This is inaccurate.  At the hearing on McLaughlin's motion to withdraw his guilty plea, McLaughlin's trial counsel was adamant that:

> I never told [McLaughlin] he would get five to eight years.  I told him that he had a five-year mandatory consecutive to whatever the sentence was on the first count and that it was a life sentence and we can present mitigating argument. I didn't agree with those guidelines that came out.  But I – there was never a promise by me to sentencing.

(Doc. 397 at 26).  Earlier in the hearing, McLaughlin's trial counsel made the same point:

> **A.** I told him he was facing at least a consecutive five-year mandatory minimum for 924 C. up to life.

**Q.** That's what you told him?

**A.** It's what the guilty plea says – the guilty plea underlined it.  We went through it.

**Q.** I understand that's what the document says.  I'm asking you what came out of your mouth.  Did you tell him he was looking at a sentence of perhaps five years or maybe eight years?

**A.** What I said – I said that the judge has wide discretion, he must at least give you a consecutive five-year sentence for 924 C.  It has to be consecutive to something.  It can go to life, but the judge can give you anything.  If we can present mitigation at sentencing that he could get – he can get eight years.  He can get ten years.

(*Id.* at 22).  Contrary to McLaughlin's assertion, the evidence is not "indisputable" that McLaughlin's trial counsel gave him unrealistic sentencing expectations.  There is significant evidence establishing that his trial counsel provided a best-case scenario for sentencing while also cautioning that advice against the reality that the judge has "wide discretion" and the maximum sentence was life imprisonment.  Therefore, McLaughlin's counsel's conduct and advisement in relation to sentencing did not "fall below an objective standard of reasonableness."  *See Strickland*, 466 U.S. at 694.

Additionally, "defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion."  *Shedrick*, 493 F.3d at 299.  Here, McLaughlin was provided with his maximum sentencing exposure and an explanation of the sentencing court's discretion in his written plea agreement and during his plea colloquy.  At his plea colloquy, the judge advised him:

**Q.** Okay. Now, I am obliged to tell you what the maximum sentence is available are for each of these counts. First, on count one, the use of interstate commerce facilities in the commission of murder for hire is ten years in prison, $250,000 fine, up to three years of supervised release and a $100 special assessment.

Count three, possession and use of a firearm during and in relation to a crime of violence, aiding and abetting, that's five years mandatory minimum to life in prison, $250,000 fine, five years of supervised release, $100 special assessment. And count five, shipping and transporting a firearm in interstate commerce, maximum ten years in prison, $250,000 fine, three years of supervised release, $100 special assessment. Granted that these terms involve the course of a mandatory minimum of five years no matter what and a maximum of life in prison in terms of accumulation of these three counts, do you understand that?

**A.** Yes, sir.

**MR. SEMPA:** Your honor, one final point. That mandatory minimum – that sentence – whatever the Court imposes on count three must also run consecutive to any other sentence that the Court imposes.

**THE COURT:** Well, what I'm suggesting to him is – he's got a maximum up to life.

**MR. SEMPA:** Correct.

**THE COURT:** Consecutive or otherwise, that's what is available.

**MR. SEMPA:** Correct.

(Doc. 396 at 8-9). The court went on to describe "the sentencing process" to McLaughlin, including "advisory sentencing guidelines" and the 18 U.S.C. § 3553(a) factors which the court would consider at sentencing. (*Id.* at 10-11). The court specifically explained to McLaughlin that "what your guideline range will be is not known and won't be known until

there is a presentence report and all objections are resolved, and only then will I know what your guideline range is in order to look at that as a part of this sentencing process." (Id.).[6]

Even if McLaughlin's trial counsel provided "unrealistic expectations and advice" regarding his sentence, as McLaughlin alleges, that advice and any alleged ineffective assistance resulting therefrom became irrelevant upon his receipt of the written plea agreement and his in-person plea colloquy. Therefore, the Court will overrule McLaughlin's objection (Doc. 469 at ¶ 7) and deny McLaughlin's ineffective assistance of counsel claim relating to trial counsel's advice on sentencing.

McLaughlin objects to Judge Arbuckle's conclusion that "McLaughlin has not shown prejudice resulted when [post-plea counsel] Attorneys Krasner and Collins failed to include additional arguments in their motion to withdraw the guilty plea." (Doc. 469 at ¶ 8 (internal citations and quotations omitted)).

Although only one ground for withdrawal of McLaughlin's guilty plea was included in the motion and brief, McLaughlin's post-plea counsel conducted extensive questioning on a variety of issues beyond the narrow scope of the arguments advanced in the Motion during the hearing for McLaughlin's motion to withdraw his guilty plea. (See generally Doc. 397). As summarized by the Government,

---

[6] In addition to the Court describing the sentencing process, the Government summarized the applicability of the Sentencing Guidelines, explaining that "the defendant and counsel both understand that the sentencing guidelines in an advisory capacity to the Court do apply to the offenses to which he's pleading guilty." (Doc. 396 at 11). The Government also provided the maximum sentence for each count to which McLaughlin agreed to plead guilty. (Id. at 11-13).

> Despite repeated objections from Government counsel, post-plea counsel attacked trial counsel's competency and effectiveness on the following issues: erroneous sentencing advice (N.T. Withdrawal of Guilty Plea, p. 10-32); failure to file objections to the PSR (N.T. Withdrawal of Guilty Plea, p. 31-31); failure to spend adequate time with McLaughlin (N.T. Withdrawal of Guilty Plea, p. 9-10, 14); failure to disclose discovery to McLaughlin (N.T. Withdrawal of Guilty Plea, p. 7); excessive fees (N.T. Withdrawal of Guilty Plea, p. 6, 57-58); promises made, promises broken (N.T. Withdrawal of Guilty Plea, p. 17-21); sentencing promises (N.T. Withdrawal of Guilty Plea, p. 22-30); allowing McLaughlin to provide confession (N.T. Withdrawal of Guilty Plea, p. 51-54).

(Doc. 436 at 54-55). This shows that McLaughlin's post-plea counsel made extensive arguments on his behalf, attacking multiple facets of his guilty plea and his trial counsel's representation. The judge permitted this because he viewed the supplemental arguments "as part of the same dynamic" and did not see the extraneous questioning as an "independent ground" for withdrawal of McLaughlin's guilty plea. (Doc. 397 at 24-25).

McLaughlin's post-plea counsel's decision not to include certain arguments in the motion to withdraw the guilty plea was not objectively unreasonable. Even if that decision was objectively unreasonable, which it was not, McLaughlin did not suffer any prejudice because his post-plea counsel was permitted to question his trial counsel regarding a variety of potential grounds for withdrawing his plea. Therefore, the Court will overrule McLaughlin's objection to the R&R (Doc. 469 at ¶ 8) and deny McLaughlin's claim of ineffective assistance of counsel for his post-plea counsel's failure to assert certain arguments in his motion to withdraw his plea.

McLaughlin's next objects to Judge Arbuckle's conclusion that "the record in this case shows that Defendant was suffering from some level of mental illness on the date he

pleaded guilty, but Defendant has not alleged or provided any evidence that he was incompetent at the time of the plea." (Doc. 466 at 54; Doc. 469 at ¶ 9). "Absent such evidence," Judge Arbuckle determined that McLaughlin did not suffer prejudice from his post-plea counsel's failure to renew his trial counsel's § 4241 motion. (*Id*.). According to McLaughlin, his post-plea counsel was "aware of Mr. McLaughlin's mental health history and prior counsel's concerns," but "at no point in time did they renew the motion for a psychiatric examination and/or raise that mental health history as a possible supporting basis for the withdrawal of the guilty plea." (Doc. 470 at 18).

McLaughlin's argument is without merit. At no point did Dr. Baird raise any concerns regarding McLaughlin's competency in the psychological report he prepared for the purposes of mitigation at sentencing. (*See* Doc. 419-1). Instead, Dr. Baird explained that McLaughlin's mental health symptomology contributed to the loss of "jobs, his marriage, his children and his social relationships," but "[t]his loss is definitely not because Edward is incompetent intellectually," noting that McLaughlin "scores better than 70% of the people in his age group for traditional academic abilities … [and] his IQ score is estimated to be even higher (98'th percentile) at around 130[.]" (*Id.* at 7). As previously stated, during his plea colloquy, McLaughlin confirmed that he understood the proceeding, his guilty plea agreement, and that he could think clearly and had received no recent mental health treatment at the time of the plea. (Doc. 396 at 3-7).

Upon review of the record, there is no evidence upon which to conclude that the decision of McLaughlin's post-plea counsel not to renew his trial counsel's § 4241 motion was objectively unreasonable. *See United States v. Singleton*, 2021 WL 4893855, at *4 (E.D.Pa. Oct. 20, 2021) ("The plea hearing and sentencing transcripts cited above support counsel's actions and reveal no evidence whatsoever that Defendant was laboring under any sort of mental incapacitation such that a competency evaluation was necessary."). The Court finds that McLaughlin has not alleged or provided any evidence that he was incompetent at the time of the plea. Accordingly, the Court will overrule McLaughlin's objection to the R&R (Doc. 469 at ¶ 9) and deny McLaughlin's claim for ineffective assistance based on his post-plea counsel's failure to renew his trial counsel's § 4241 motion.

Next, McLaughlin objects to Judge Arbuckle's conclusion that McLaughlin is not entitled to relief on his claim of ineffective assistance for his post-plea counsel's alleged failure to read and discuss the pre-sentence investigation report (PSR) with McLaughlin. (Doc. 469 at ¶ 10). According to McLaughlin, "nowhere at sentencing was there any inquiry by the court or, for that matter, any indicia to provide verification that Mr. McLaughlin and his attorneys had read and discussed the PSR." (Doc. 470 at 19-20).

At the withdrawal of guilty plea hearing, McLaughlin indicated that he received the pre-sentence investigation report from the Government. (Doc. 397 at 142 ("I did not get anything from Mr. Henry until I received from Mr. Sempa's office – probation department the

P.S.I.").  At sentencing, McLaughlin's post-plea counsel began the hearing with a discussion

of the PSR, noting that "we became involved in the case after the final pre-sentence

investigation" and arguing that the "prior history category overrepresents" McLaughlin's

criminality.  (Doc. 394 at 2-6).  McLaughlin's post-plea counsel discussed information from

the PSR throughout McLaughlin's sentencing and in the sentencing memorandum they

prepared on McLaughlin's behalf, as well.  (*Id.* at 2-4, 21-22, *see generally* Doc. 273).

Additionally, at sentencing, the Government referenced specific portions of the PSR,

including a letter from McLaughlin's ex-wife.  (*Id.* at 40).  McLaughlin never raised an

objection to argue that he had never seen this letter or the PSR, but McLaughlin did object

on his own (and not through counsel) when the Government made statements with which

he disagreed.  For example:

> **MR. SEMPA:** Protecting the public, especially the intended victim in this case.
> And the intended victim in this case, who is also a victim, not just an intended
> victim, is in the courtroom today.  I asked her if she wanted to address the
> Court.  She said I have written the Court a letter.  I advised her that that letter
> is part of the pre-sentence report.  And she indicated that she would, rather
> than addressing the Court and repeating what she said in that letter, she would
> rely on the Court's reading of that letter.
>
> But perhaps, and I read the letter, and what's in that letter that is most damning
> for Mr. McLaughlin is that this is a woman who still leaves in fear.  This is a
> woman and her step-daughter, because that letter is in the PSR as well, they
> still live in fear.  And they live in fear because this individual, Mr. McLaughlin,
> has demonstrated that not only is he a very dangerous man when he's on the
> street, when he's out of prison; he's still a dangerous man in prison.
>
> He hatched a plot while in prison.  He urged – he sent letters to Mr. Williams to
> urge him to commit this crime when he was in prison.  And one of the letters in
> particular, your Honor, and this was when he was – he was expecting to be put

in prison for another violation of a PFA, it's dated March 27, 2012.  He's telling Gary Williams that you've got the green light to kill Joanna Van Tine.

**DEFT. McLAUGHLIN:** I never said that.

**MR. SEMPA:** Tells him to send the gun where he told him to send it.  And then he says –

**DEFT. McLAUGHLIN:** I never said that.

(Doc. 394 at 40-41).  Neither McLaughlin's counsel nor McLaughlin himself objected to the Government's references to the PSR to argue that they had not seen, received, or had time to discuss the PSR with each other.  McLaughlin has presented no evidence to support his claim that his counsel did not discuss the PSR with him; thus, there is no basis upon which to find that McLaughlin's counsel's conduct was objectively unreasonable or that McLaughlin suffered any prejudice from counsel's alleged conduct with respect to the PSR. *See United States v. Rivera*, 79 F. App'x 522, 527 (3d Cir. 2003) (explaining that a district court is only required to "somehow determine that the defendant has had [the] opportunity" to read and discuss the PSR with his counsel (quoting *United States v. Stevens*, 223 F.3d 239, 241 (3d Cir. 2003)).  The Court will therefore overrule McLaughlin's objection to the R&R (Doc. 469 at ¶ 10) and will deny McLaughlin's ineffective assistance of counsel claim.

Next, Judge Arbuckle denied McLaughlin's claim that the cumulative errors of all counsel amounted to ineffective assistance, concluding that "[a]s explained above, each of the alleged errors of counsel did not result in prejudice.  As such, there are no cumulative errors." (Doc. 466 at 57).  McLaughlin objects to Judge Arbuckle's finding and claims that

"viewing the entire picture of Mr. McLaughlin's case, this Court should not have confidence in the conviction and sentence."  (Doc. 470 at 21; *see also* Doc. 469 at ¶ 11).

The Court disagrees with McLaughlin's assessment of the record.  Instead of losing confidence in McLaughlin's guilty plea and sentence after reviewing the record, the Court gained confidence in the competence of his multiple attorneys and the knowing, voluntary, and intelligent nature of his guilty plea.  Upon extensive review of the alleged errors identified by McLaughlin in the aggregate, the Court is satisfied that McLaughlin did not suffer ineffective assistance of counsel.  Accordingly, the Court will overrule his objection (Doc. 469 at ¶ 11) and deny his claim of ineffective assistance based on the alleged cumulative errors of counsel.

McLaughlin objects to Judge Arbuckle's recommendation that this Court deny McLaughlin's request to "vacate the remaining convictions under Counts One and Five of the Third Superseding Indictment on the basis of *Rehaif* and ineffective assistance of counsel."  (Doc. 469 at ¶ 13; Doc. 466 at 58).  Based on the foregoing analysis, the Court will overrule this objection and deny McLaughlin's request to vacate his convictions pursuant to Counts One and Five of the Third Superseding Indictment.

In his Reply, McLaughlin argues:

Naturally, the Government studiously ignores any details of the origination of Mr. McLaughlin's eleventh-hour plea including the following: until the morning of jury selection, there was no plea agreement; until the morning of jury selection, there was no prior discussion of a non-trial disposition; trial counsel had not met with Mr. McLaughlin for four months prior to the morning of jury selection and was ill-prepared to even start a trial; Mr. McLaughlin was required

> to provide an interrogation prior to the entry of the plea, in which Mr. McLaughlin
> was extremely emotional during the course of the interrogation; no prompt
> mental health examination was ever conducted even though at the time trial
> counsel was aware of it and the record reveals (and Magistrate Arbuckle
> confirmed) that Mr. McLaughlin was suffering from mental illness at the time of
> the change of plea; and Mr. McLaughlin received a grossly deficient projection
> by his lawyer that he would receive a five to ten year sentence by the court.
> (Doc. 419 citing record throughout).

(Doc. 481 at 9-10). McLaughlin's argument takes significant liberties with the record and

engages in what can fairly be described as speculation untethered to the record. Although

the Court has analyzed the following points at great length above, the Court believes it is

prudent to address each of McLaughlin's incorrect assertions contained in the above

paragraph to ensure there is a clear summary of what claims the record does, and more

importantly does not, support.

McLaughlin is correct to say that there was no plea agreement prior to the morning

of trial. However, this is not due to any misconduct on behalf of McLaughlin's trial counsel,

the Government, or the Court because McLaughlin insisted on asserting his Sixth

Amendment right to a jury trial until the morning of trial, at which point he changed his mind.

(Doc. 397 at 16-18).   At that point, McLaughlin requested that his trial counsel engage with

the Government to determine whether a plea agreement was possible at that late stage.

(*See, e.g., id.* at 17-18 ("He was the one that asked about a guilty plea.")).  McLaughlin

conveniently overlooks the testimony from his trial counsel where he explains that he "was

prepared to go to trial" and that he and McLaughlin "had talked before," specifically "about

him cooperating against Mr. Williams at one point" and they "had talked about trial versus

non-trial." (*Id.* at 16).  McLaughlin's counsel expected that McLaughlin was "going to go to trial" and had even "made reservations for the week, had clothes up here for the week expecting to go to trial." (*Id.* at 15-17).  Nothing in the record, including McLaughlin's own assertions, provide any reason for the Court to discredit or otherwise doubt the testimony of McLaughlin's trial counsel.

McLaughlin was never "required to provide an interrogation prior to the entry of the guilty plea," as he claims.  In reality, McLaughlin "waived his right to remain silent and agreed to give a full confession to the government" "in the presence of his attorney."  (Doc. 396 at 24-25).  There was no requirement that McLaughlin speak to the Government, nor can the discussion with the FBI agents reasonably be described as an "interrogation."  That McLaughlin now apparently regrets providing a "full confession" to the Government is of no legal consequence in his § 2255 Motion.

McLaughlin's claim that there was "no prompt mental health examination" is without merit.  McLaughlin's attorneys had every opportunity to file such motion but, given the fact that nothing in the record raises any legitimate concern over his competency to stand trial, plead guilty, or be sentenced, there was "no basis to request an incompetency hearing" or conduct further investigation into McLaughlin's mental health.  *See Rhoades v. Smith*, 2020 WL 1694597, at *6 (E.D.Pa. April 7, 2020) ("Where a defendant, at a plea hearing, suggests that he can understand and participate in proceedings and give 'clear, unequivocal answers' to the court's questions, without appearing irrational or confused and without any medical

opinion indicating incompetency, counsel has no basis to request an incompetency hearing." (quoting *United States v. Younger*, 2016 WL 6780023, at *3 W.D.Pa. Nov. 15, 2016)). Although regrettable that McLaughlin has been suffering from significant mental health issues for many years, there is no indication that McLaughlin's competency was in any way impacted by these issues.

Finally, McLaughlin again makes the erroneous claim that he was given "a grossly deficient [sentencing] projection" by his trial counsel. This claim is wholly unsupported by the record, as the record shows that McLaughlin's trial counsel repeatedly told McLaughlin about his maximum sentencing exposure while also providing a professional assessment as to what his minimum sentencing exposure could be if they presented sufficient mitigating factors at sentencing. (*See* Doc. 397 at 22, 26). Trial counsel was not, and cannot be, found ineffective for providing McLaughlin with the range of sentencing possibilities he faced after entry of his guilty plea. And, as explained above, the sentencing advice provided by McLaughlin's trial counsel became irrelevant because his "written plea agreement and in-court guilty plea colloquy clearly establish[ed] [McLaughlin's] maximum potential exposure and the sentencing court's discretion." *See Shedrick*, 493 F.3d at 299.

The incredible arguments made by McLaughlin in the instant petition were constructed through the use of cherry-picked statements and instances found in the record that were wholly removed from their proper context and stripped of their true meaning. As the Court has done above, situating McLaughlin's various claims within their correct place in

the record demonstrates that McLaughlin's ineffective assistance of counsel claims carry no weight. For these reasons, the Court will overrule all of McLaughlin's objections to the R&R related to his ineffective assistance claims and likewise deny his ineffective assistance of counsel claims.

## V. Evidentiary Hearing

Section 2255(b) advises that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "The decision to hold a hearing is wholly within the discretion of the district court." *Eckenberger v. United States*, 2022 WL 609208, at *5 (M.D.Pa. March 1, 2022) (citing *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). In this case, although Judge Arbuckle suggested an evidentiary hearing "may be necessary to resolve the issue" of whether McLaughlin "was aware of his status as a felon before or on the day he possessed and shipped the rifle," (Doc. 466 at 43), he ultimately concluded that "[n]o evidentiary hearing is necessary" for McLaughlin's *Rehaif* claim because it is untimely. (*Id.* at 58). He also concluded that a hearing is not necessary for his ineffective assistance of counsel claims. (*Id.*).

The Court agrees with Judge Arbuckle that no evidentiary hearing is necessary because "the motion and files and records of this case show conclusively that the movant is

not entitled to relief." *Eckenberger*, 2022 WL 609208, at \*5 (M.D.Pa. March 1, 2022)

(internal quotations and citations omitted)).  Therefore, the Court will overrule McLaughlin's

objection arguing that he "has established a legal basis for an evidentiary hearing."  (Doc.

470 at 21-22; *see also* Doc. 469 at ¶ 12; *see also id.* at ¶ 3).

## VI. CERTIFICATE OF APPEALABILITY

"A § 2255 petitioner can appeal the denial of his claims only if he obtains a certificate

of appealability ["COA"]."  *United States v. Bristol*, 2022 WL 2068048, at \*8 (E.D.Pa. June 8,

2022) (citing 28 U.S.C.  2253(c)(1)).  The petitioner must make a "substantial showing of the

denial of a constitutional right" for the district court to issue a COA, which requires a

showing that "reasonable jurists would find the district court's assessment of [his]

constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2), *Slack v. McDaniel*, 529

U.S. 473, 484 (2000).  In this case, a COA is not warranted on any of McLaughlin's claims

because the Court finds that reasonable jurists would not find this Court's the resolution of

McLaughlin's constitutional claims debatable or wrong.

## VII. CONCLUSION

Based on the foregoing analysis, the Court will adopt Magistrate Judge Arbuckle's R&R and overrule McLaughlin's objections, such that the Court will: (1) deny McLaughlin's pro se motions filed before June 1, 2020 as moot; (2) vacate Mclaughlin's conviction and sentence under Count Three of the Third Superseding Indictment (3) deny McLaughlin's request to vacate his convictions under Counts One and Five of the Third Superseding Indictment; (4) deny McLaughlin's request for an evidentiary hearing; and (5) not issue a certificate of appealability.  A separate Order will follow.


Robert D. Mariani
United States District Judge